UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| UNITED STATES OF AMERICA | ) )  ) |
| v. | ) Criminal Case No: **1:21-cr-00382** )  |
| CHRISTOPHER WARNAGIRIS, | ) ) ) |
| Defendant. | ) ) |

# DEFENDANT'S MEMORANDUM IN OPPOSITION TO PRETRIAL SERVICES REQUEST TO AMEND CONDITIONS OF PRETRIAL RELEASE

The Pretrial Services Agency for the District of Columbia ("DC PSA") filed a Pretrial Compliance Report for Major Christopher Warnagiris that shows Maj. Warnagiris as perfectly compliant.

Nonetheless, DC PSA requested two amendments to Maj. Warnagiris' conditions of pretrial release. First, they requested that the conditions of release be modified to include reporting to DC PSA weekly *by telephone*. Second, DC PSA requested that Maj. Warnagiris not "possess a firearm, destructive device, or other weapon" *only because* this condition, they claim, "is a national standard …imposed as a condition of release in this jurisdiction for those individuals charged in connection with the events that took place on January 6, 2021."

The defendant opposes DC PSA's second request as violative of Maj. Warnagiris' constitutional rights protected by the Second, Fifth, and Eighth Amendments, and his statutory rights under 18 U.S.C. § 3142.

## BACKGROUND

Maj. Warnagiris was arrested on May 13, 2021 in the Eastern District of Virginia for his participation in the January 6 Capitol incident in the District of Columbia, and released that same day on his personal recognizance with certain pretrial release conditions. [See Document 12].

On June 28, 2021, Maj. Warnagiris appeared before this court for Arraignment on these charges. Defendant's pretrial release conditions were amended pursuant to requests made by both parties. [Document 10]. The government did not ask this court to deprive Maj. Warnagiris of his Second Amendment right.

Indeed, prior to the Arraignment, defense counsel conferred with government counsel outside of court and raised constitutional concerns to the potential of a firearms restriction. After particularized evaluation of this restriction and the facts of Maj. Warnagiris' case, the government agreed that because "there is currently no evidence that Mr. Warnagiris had any weapons with him on January 6th" the condition would not be pursued.[1] As such, the government did not seek this restriction at the June 28th hearing.

More than two months after his initial arrest, after two court appearances, and after strict compliance with his pretrial requirements, DC PSA, without any need particularized to this

---

[1] While the defendant was indicted on forceful interference with a law enforcement officer, the government's Statement of Facts makes it clear that force was used against Maj. Warnagiris: "Officer A.W. recalled trying to push him [Warnagiris] out of the way," before Maj. Warnagiris allegedly "push[ed] him back." Moreover, this alleged pushing is not consistent with the video reviewed by defense counsel. The officer who made the allegation only made it after being interviewed by the FBI two and a half months after the alleged incident, on March 26, 2021, and only after being presented with a *screenshot* from a surveillance video (not the video itself), noting that he "did not realize the protestor was fighting to push the door open until he saw the screen shot." The interviewing FBI agent even noted in his FD-302 that the comments Officer A.W. attributes to Maj. Warnagiris possibly came from another defendant, as the alleged conversation that this officer claims to have had with Maj. Warnagiris does not appear to be supported by the video either. Indeed, the comments attributed to Maj. Warnagiris are inaccurate as to Maj. Warnagiris and appear to have been made by another protestor who was seen standing face-to-face with Officer A.W. in the video.

Notwithstanding the highly questionable veracity of Officer A.W.'s claims against Maj. Warnagiris and the lack of corroborative evidence, for purposes of the Second Amendment issue at hand and the consideration of the severity of the conduct alleged, Maj. Warnagiris is not accused of anything more physical or dangerous than pushing back.

defendant, made a generic request to subject Maj. Warnagiris to a loss of his Second Amendment right. DC PSA did not confer with either the government or the defense prior to making this request.[2] Ironically, DC PSA made this request at the same time as requesting that Maj. Warnagiris be required to report via *telephone*, seeking remote contact with their office that would not present a scenario of potential in-person danger to a pretrial officer from weekly home visitation, which was one of the arguments for a firearms deprivation request in the other Capitol cases when such a request was made, cases which DC PSA appears to now reference.[3]

## ARGUMENT

DC PSA is seeking to deprive the defendant of a constitutional right during pretrial release without any *particularized* need to deprive Maj. Warnagiris of his constitutional right, and without any *particularization* of this request to the defendant's case or his background. DC PSA makes absolutely no nexus to the offenses charged or to the defendant in their request. Instead, DC PSA is asking for what they call a "standard" condition of pretrial release, admitting that they are not particularizing this request to this defendant or a specific concern of DC PSA. Instead, they are seeking a categorical deprivation of Second Amendment rights for all of defendants charged for participation in the January 6 Capitol incident, to include Maj. Warnagiris.

---

[2] DC PSA is not a party to this case that has made a motion before this court. DC PSA is an agency of the court that has made a *sua sponte* request *as agent* without conferring with either party and without noting a change to the facts of this case. See 18 U.S.C. § 3154 (functions and powers relating to pretrial services). There are no changed circumstances from the original factual record that justify altering the conditions originally recommended and adopted by this court with the concurrence of the two parties.

[3] Of note, DC PSA's assertion, that all defendants charged in relation to the January 6 incident have been deprived of their right to possess firearms or weapons, is inaccurate.

This request seeks to deprive *an entire class of defendants* of their Second Amendment right without particularizing the need to do so to the defendants as individuals with individual cases, in violation of the Constitution. As such, this request violates multiple portions of the Bill of Rights and the statute that guides pretrial release, 18 U.S.C. § 3142.

I. The Request Violates the Second Amendment

The requested condition of refraining from possession of a firearm is a pretrial deprivation of a defendant's Second Amendment right to possess arms. The Second Amendment to the United States Constitution ensures that "the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend II.

In 2008, in the *District of Columbia v. Heller*, the Supreme Court held that "the Second Amendment conferred an individual right to keep and bear arms." *District of Columbia v. Heller*, 128 S. Ct. 2783 (2008). While *Heller* also carved out exceptions for depriving certain classes of individuals of their Second Amendment rights, this list was limited to felons, the mentally ill, schools, and conditions on commercial sales. See 128 S. Ct. at 2786. The *Heller* list of exceptions did not include pretrial release.

Later that same year, the U.S. District Court for the Southern District of New York reviewed the issue of *Heller* as it applied to pretrial release conditions in great detail, and found that "there is no basis for categorically depriving persons who are merely accused of certain

crimes of the right to legal possession of a firearm." *United States v. Arzberger*, 592 F. Supp. 2d 590, 602 (S.D.N.Y. 2008).[4]

Yet, that is *exactly* what DC PSA is asking this court to do in Maj. Warnagiris' case — to categorically deprive the defendant, as a member of a class of January 6 defendants, of his constitutional right to bear arms.

There is no getting around this: *Heller* did not carve out a constitutionally permitted prohibition on the deprivation of the Second Amendment for defendants on pretrial release; a prohibition for defendants who are presumed innocent, whose charges are in no way connected to firearms, who have no criminal history, who do not pose a violent danger to the community, who have already been released on these exact charges without the imposition of this restriction and who have done nothing to warrant the request. Indeed, DC PSA recorded Maj. Warnagiris as perfectly compliant with all pretrial release conditions and with all local and federal laws.

Just as the First Amendment's right to freedom of religion cannot be taken away during pretrial release without a compelling reason to preserve the safety of the community, the same analysis applies to deprivation of the Second Amendment. See *Arzberger*, 592 F. Supp. 2d at 604. After all, in *Heller*, the Supreme Court made clear that there is no hierarchy of constitutional rights: "[t]he very enumeration of the right takes out of the hands of government—even the Third Branch of Government—the power to decide on a case-by-case basis whether the right is really worth insisting upon." *Heller*, 128 S. Ct. at 2821. See also *Arzberger*, 592 F. Supp. 2d at 602 (holding that pretrial release "conditions that infringe protected liberty interests without

---

[4] A defendant's Second Amendment right as it relates to pretrial release is rarely litigated and case law on the topic following the *Heller* decision is highly limited. Per counsel's review, the *Arzberger* case is the most relevant analysis of record as it relates to this issue.

providing the accused with an individualized assessment of the need for such conditions" are "unconstitutional on their face."). The court must, therefore, make an individualized determination for each defendant when considering the deprivation of his Second Amendment right. *Arzberger*, 592 F. Supp. 2d at 602-603 ("[T]here is a serious risk that, in the absence of an individualized determination, an accused person will wrongly be deprived of his Second Amendment rights.").

There must be proof of a nexus between an accusation pending before this court and the need to prohibit possession of a firearm by *this* defendant as a condition of *his* pretrial release. DC PSA cannot just *ask* this court to take away an individual constitutional right simply because the defendant was arrested for conduct that occurred at the Capitol on January 6. The Indictment in this case does not reference the use of arms, nor does its predecessor Complaint and accompanying Statement of Facts — nothing on the record or in discovery for this case includes any reference to firearms. And, the government has even agreed not to pursue the firearms prohibition against this defendant because "there is currently no evidence that Mr. Warnagiris had any weapons with him on January 6th." Furthermore, DC PSA does not present evidence that pretrial services personnel are in any way physically endangered by the defendant, and have even requested remote contact with the defendant through weekly phone calls instead of in-person weekly home visits.

This court has not been presented with the evidence necessary to even begin considering the deprivation of this defendant's Second Amendment right.

<u>II. The Request Violates 18 U.S.C. § 3142, and the Fifth and Eighth Amendments</u>

This court must make an independent judicial determination of the danger caused by the defendant and the efficacy of a proposed bail condition. See *United States v. Arzberger*, 592 F. Supp. 2d at 603. This individualized review and requirement of showing a nexus is also part of the defendant's Due Process rights under the Fifth Amendment, and the Excessive Bail Clause of the Eighth Amendment.

The Excessive Bail Clause of the Eighth Amendment applies to conditions of pretrial release. See *United States v. Salerno*, 481 U.S. 739, 754 (1987) (holding "the Government's proposed conditions of release or detention not be 'excessive' in light of the perceived evil'"). Pretrial conditions of release must be "reasonably calculated to fulfill" the sought purpose of the requested conditions. See *Galen v. County of Los Angeles*, 477 F.3d 652, 659-60 (9th Cir. 2007); *United States v. Kennedy,* 593 F. Supp. 2d 1221 (W.D. Wash. 2008). Narrow tailoring of pretrial release conditions is part of this court's Eighth Amendment obligations to Maj. Warnagiris to protect him against excessive bail.

The Due Process clause of the Fifth Amendment entitles the defendant to protection from deprivation of his constitutional rights through *individualized* and *particularized* consideration of such deprivation requests by the court. See *United States v. Kennedy*, 593 F. Supp. 2d 1221 (W.D. Wash. 2008). This is also why 18 U.S.C. § 3142, which directs this court's pretrial release and which operates under the confines of the Bill of Rights, requires this court to release the defendant "subject to the *least restrictive*" condition of pretrial release, and requires that any imposed conditions be "*reasonable"* in assuring safety. [Emphasis added.] The careful

particularization of each pretrial release condition to this defendant is both a statutory and a constitutional obligation that each court has to each defendant.

DC PSA's request is neither least restrictive, nor reasonable; nor is it tailored to this case or this defendant. Instead, it is a blanket request that they seek to apply to an entire class of defendants, in clear violation of the Constitution and the pretrial release statute.

Reviewing the facts of this case, there is no basis for any party to make the request to deprive Maj. Warnagiris of a constitutional right. The defendant has been released on conditions which this court has already adjudicated as the least restrictive means to assure both safety and reappearance in court. The defendant's alleged conduct, clean record, employment, dedication to his country and community, etc., have all been considered by the parties and the court. The defendant has complied with the court-ordered conditions on his pretrial release and has done nothing that indicates a need for the alteration of these conditions. Nothing on the record, nor known to the parties outside of the record, shows otherwise. A deprivation of his Second Amendment right without a requisite basis would result in excessive bail and a due process violation, in addition to being violative of the *"least restrictive"* limitation on 18 U.S.C. § 3142. *See also Arzberger*, 592 F. Supp. 2d at 605-606 ("Conditioning pretrial release on the relinquishment of constitutionally protected rights in circumstances where the conditions are not necessary to satisfy legitimate governmental purposes would constitute excessive bail in violation of the Eighth Amendment.")

## CONCLUSION

Without an individualized finding that the defendant's right to possess a firearm poses a danger to the community, three constitutional rights of the defendant are violated — rights protected by the Second, Fifth, and Eighth Amendments. And, imposing a blanket condition on an entire class of defendants also violates the "least restrictive" clause of 18 U.S.C. § 3142 and the reasonableness requirement under the same.

There is no individualized basis presented to the court on which to deprive Maj. Warnagiris of his Second Amendment right. Any imposed pretrial release condition must be "reasonably necessary" in this case to secure the safety of the community. *Arzberger*, 592 F. Supp. 2d at 603. There is absolutely no evidence before the court coming anywhere close to this standard. Instead, DC PSA is simply asking for a "standard" condition that would amount to indiscriminate deprivation of Second Amendment rights of all January 6 arrestees without an individualized showing of reasonable necessity or nexus. DC PSA's request is unparticularized and unlawful.

There is no basis, therefore, not in DC PSA's request, not in the Indictment, not in the Statement of Facts, and not in the Pretrial Compliance Report, that justifies this request for the deprivation of a defendant's constitutional right. The request should therefore be denied.

Respectfully submitted,
By Counsel:

/s/
_____
Marina Medvin, Esq.
*Counsel for Christopher Warnagiris*

MEDVIN LAW PLC
916 Prince Street
Alexandria, Virginia 22314
Tel: 888.886.4127
Email: contact@medvinlaw.com

**CERTIFICATE OF SERVICE FOR CM/ECF**

I hereby certify that on August 19, 2021, I will electronically file the foregoing with the Clerk of the Court for the United States District Court for the District of Columbia by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

/s/
______________________________
Marina Medvin, Esq.

