# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Case No. 21-cr-382-PLF |
| | : | |
| CHRISTOPHER WARNAGIRIS | : | |
| | : | |
| Defendant. | : | |

## UNITED STATES' REPLY IN SUPPORT OF MOTION FOR PROTECTIVE ORDER

The United States of America hereby respectfully submits its reply in support of its motion for the entry of a protective order governing the production of discovery by the parties in the above-captioned case.

1.      To begin, Defendant does not substantively dispute any of the facts supporting the use of a protective order in this matter.  Defendant does not dispute that the investigation and prosecution of those implicated in the Capitol Attack will likely be one of the largest in American history, both in terms of the number of defendants prosecuted and the nature and volume of the evidence.  Defendant does not dispute the scope of the charges that are under investigation or the voluminous amounts of information and evidence relating to both charged and uncharged individuals which may be discoverable pursuant to Federal Rules of Criminal Procedure 16 and 26.2, Local Criminal Rule 5.1(a), the provisions of *Brady v. Maryland*, 373 U.S. 83, 87 (1963), *Giglio v. United States*, 405 U.S. 150, 153-54 (1972), and the Jencks Act, 18 U.S.C. § 3500.  Nor does Defendant dispute the possibility that some of these evidentiary materials may contain sensitive information.  (Examples of the types of information that the Government may designate Sensitive or Highly Sensitive are identified in paragraph one of the proposed order.)  Finally,

Defendant does not seriously claim that any aspect of the proposed order would be particularly onerous or unworkable.

2.      For these reasons and those stated in its motion, the Government has demonstrated the "good cause" required for the Court to issue a protective order governing the production of discovery in this matter.  *See United States v. O'Keefe*, No. 06-CR-0249, 2007 WL 1239204, at \*2 (D.D.C. Apr. 27, 2007) (describing the court's discretion as "vast"); *United States v. Cordova*, 806 F.3d 1085, 1090 (D.C. Cir.) (2015) ("[A] 'trial court can and should, where appropriate, place a defendant and his counsel under enforceable orders against unwarranted disclosure of the materials which they may be entitled to inspect.'" (quoting *Alderman v. United States*, 394 U.S. 165, 185 (1969)).

3.       Many of Defendant's objections mischaracterize the proposed order, both as to the type and quantity of material it seeks to protect. For instance, Defendant alleges that the "government is seeking to protect *most* discovery materials in this case." ECF No. 17 at 2 (emphasis added). This is simply untrue. At this time, Defendant has received a significant portion of the Government's discovery, including agent reports, the applicable search warrant, and publicly available video, as it relates to Defendant Warnagiris. Additional evidence, including grand jury materials and analysis of Defendant's electronic devices, will be forthcoming with no sensitivity designation. In fact, the *only* evidence in this case that the Government currently wishes to designate under the protective order is uncut and significantly longer unreleased video from the U.S. Capitol's closed-circuit video ("CCTV") system.  While paragraph one of the proposed order does include an illustrative list of items that *could* be subject to a sensitivity designation, it does not designate any particular category of items as Sensitive or Highly Sensitive.  The same

2

paragraph makes clear that the Government will "make every effort to provide discovery in a manner that will allow for most discovery to be produced without such designations."

4.      Further, Paragraph 8 requires the Government to make "a good faith effort to resolve any dispute about a sensitivity designation before requesting the Court's intervention," and agree to redaction whenever redaction will resolve the basis for which the designation was applied. Paragraph 9 of the proposed order also makes clear that Defendant retains the right to seek modification of the proposed order and to challenge any particular designation before this Court. It also states explicitly provides that the burden of justifying any designation remains at all times with the Government.[1]

5.      The Government has established the requisite good cause for the proposed protective order.  The proposed order is designed to ensure Defendant has liberal access to discovery while protecting sensitive materials from unwarranted disclosure.  The reasonableness of the proposed protective order is also demonstrated by the fact that, with or without minor modifications, the proposed protective order has already been adopted without opposition in Capitol Attack cases by multiple judges including, Judges Bates (*see U.S. v. Klein*, Case No. 21-cr-236), Berman Jackson (*see U.S. v. Black*, Case no. Case No. 21-cr-127), Boasberg (*see U.S. v. Jancart*, Case No. 21-cr-148), Brown Jackson (*see U.S. v. Fitzimons*, Case No. 21-cr-181), Cooper (*see U.S. v. Egtvedt*, Case No. 21-cr-177), Friedrich (*see U.S. v. Martin*, Case No. 21-cr-201), Friedman (*see U.S. v. Bromley*, Case No. 21-cr-250), Hogan (*see U.S. v. Hatley*, Case No. 21-cr-

---

[1] Defendant makes much of a separate case (*U.S. v. Anderson*, Case No. 21-cr-215) in which defense counsel apparently represents another Capitol Attack defendant and wherein defense counsel claims that the Government decided "not to abide by the terms of the PO that it had drafted," and "shifted the burden of demonstrating good cause on to the defendant." ECF No. 17 at 5. The terms of the proposed protective order in this case are succinct and clear, that is, "the burden of demonstrating the need for a protective order remains with the government at all times." Proposed order at Paragraph 9.

98), Kollar-Kotelly (*see U.S. v. Caldwell*, Case No. 21-cr-181), Lamberth (*see U.S. v. Munchel*, Case No. 21-cr-118), McFadden (*see U.S. v. Fellows*, Case No. 21-cr-83), Mehta (*see U.S. v. Wood* (Case No. 21-cr-223), and Nichols (*see U.S. v. Miller*, Case No. 21-cr-119), as well as by Magistrate Judges Faruqui (*see U.S. v. Wilson*, Case No. 21-mj-229), Harvey (*see U.S. v. Adams*, Case No. 21-mj-291), and Meriweather (*see U.S. v. Hernandez*, Case No. 21-mj-73). [2]  Further, Judge Bates has entered the proposed protective order over a defendant's objection to signing Attachment A, a separate document which confirms a defendant's understanding of the order (*see U.S. v. Languerand*, Case No. 21 cr-353).

6.      Defendant includes a footnote at page two of his brief describing a minute order entered in *United States v. Samuel Lazar*, Case No. 21-CR-525 ABJ, by Judge Amy Berman Jackson wherein the court denied the Government's unopposed motion for the same protective order at issue here because it did not appear to comply with Local Rule of Criminal Procedure 49(f)(6)(i) addressing procedures related to sealed documents.   What Defendant conveniently omits from his footnote, however, is that Judge Berman Jackson specifically noted that "the Court is prepared otherwise to approve the proposed Protective Order," once the order complied procedurally with the local rule. The proposed protective order in this case is in compliance with Rule 49(f)(6)(i).

7.      Defendant suggests that the proposed order "creates a disparity between the parties in their ability to utilize video evidence," (ECF No. 17 at 2, 9-10). Paragraph 4(e) of the proposed

---

[2] Defendant includes a footnote at page two of his brief describing a minute order entered in *United States v. Samuel Lazar*, Case No. 21-CR-525 ABJ, by Judge Amy Berman Jackson wherein the court denied the Government's unopposed motion for the same protective order at issue here because it did not appear to comply with Local Rule of Criminal Procedure 49(f)(6)(i) which addresses procedures related to sealed documents.   What Defendant conveniently omits from his footnote, however, is that Judge Berman Jackson specifically noted that "the Court is prepared otherwise to approve the proposed Protective Order," once the order complied procedurally with the local rule.

order makes clear, however, that none of the restrictions in the order apply to the use of materials in judicial proceedings, and that any such use will be addressed by the parties and the Court prior to any such proceedings. Further, the Government has no objection to Defendant using still shots from footage in pleadings, just as the Government has done in its own filings. Though, for the reasons stated in Attachment A to the Government's original motion, (ECF No. 16), the proposed order *does* indicate that video footage may be subject to protection.[3]

8.      Defendant claims that the protective order renders him "Oliver Twist" requiring him "to beg the government to reveal evidence favorable to his case." This analogy is a poor fit. The protective order does not in any way limit the discovery that the Government *must* provide to this Defendant and every other defendant it prosecutes. Indeed, the Government has already provided much of the discovery that is unique to this Defendant and will continue to comply with every obligation that it has under the law. The protective order simply seeks to protect from public dissemination a small subset of information based on serious and legitimate security concerns.

9.      The fact that Defendant is charged individually and not with co-conspirators does not alleviate the need for the proposed protective order.  Ultimately, in order to comply with its discovery and disclosure obligations, the Government intends to make voluminous materials available in all pending cases arising out of the events of January 6, 2021, including this one.

---

[3] For the reasons described in Attachment A to the Government's motion, the Declaration of Thomas A. DiBiase, General Counsel to the United States Capitol Police ("USCP"), the Government does intend to mark all surveillance video footage from the USCP surveillance cameras as Highly Sensitive. If such footage is produced to Defendant, and Defendant believes that a Highly Sensitive designation is inappropriate, Defendant will have the opportunity to contest that designation, as described above.  At that time, Defendant will have the opportunity to explain to this Court how limiting the disclosure of such materials to the Defendant, his defense counsel, as well as any attorneys, investigators, paralegals, support staff, and expert witnesses on his defense team is problematic and why public disclosure is essential to Defendant's defense to the charges.  Similarly, if Defendant wishes to use such footage at a hearing in Court, he will be permitted to do so under the proposed order.  The order simply requires Defendant to seek the Government's agreement or to give the Government an opportunity to propose conditions before the footage is disclosed in open court – a decision that ultimately rests with the Court.

These materials will include information such as tips, witness statements, and the results of searches performed upon other individuals' devices and accounts. Given the volume of material that is likely to be made accessible to Defendant here, the proposed order ensures that this information, where appropriate, will be adequately protected.

10.     Defendant also makes the argument that, because some small portions of CCTV video are publicly available, somehow the Government has waived its ability to designate as Highly Sensitive what is a far greater percentage of CCTV video that is not public. ECF 17 at 6-8. First and foremost, Paragraph 11 of the proposed protective order makes clear that the order does not apply to, *inter alia*, materials that are or later become part of the public court record, or that are derived directly from or pertain solely to the Defendant. Thus, by the plain terms of the order, any video like the example Defendant found on Twitter and that is in the public realm, ECF No. 17 at 8, is not subject to the protective order. Nevertheless, Defendant goes on to claim that because short portions of video have become public, somehow all video from a particular camera should be released. As more fully described, *infra*, 43 seconds of publicly available video does not negate the need for a protective order for the remaining multiple of hours of unreleased video from the same camera.

11.     In sum, Defendant's real quarrel is not with the proposed protective order, itself, but with the designation of the CCTV as Highly Sensitive under the protective order's terms. This is an issue contemplated by the proposed order and includes recourse for the Defendant should he disagree with the sensitivity designation as described, *supra*. Nevertheless, the Government is prepared to briefly address this issue here.

12.     Contrary to Defendant's claims, the uncut video footage from CCTV is dramatically different from still frame photographs and should be subject to the proposed

protective order. In the Government's Motion for Protective Order, it presented its argument based on its reliance on the declaration of Thomas DiBiase. ECF No. 16-1, pp. 6-7 ¶¶ 15-16 (Attachment A - Declaration of Thomas DiBiase).  That portion of the DiBiase Declaration relies on the mosaic theory of intelligence gathering.  In essence, the release of a significant volume of video footage from the U.S. Capitol CCTV system, in this matter and others, undermines the security of the U.S. Capitol and provides a roadmap for those who may seek to repeat the events of January 6th.

13.     The videos at issue in this particular case show at least one entrance into the Capitol building from various angles, as well as other areas of the Capitol where Defendant moved about. This footage, when combined with other footage from nearby cameras, could be used to track individual rioters moving through the building thereby creating a visual pathway which other bad actors could use in planning their breach point and pathway for future attacks.[4]  The large number of cases (now more than 500 defendants and likely more to come) increases the chance for bad-actors to use video clips like these even where the individual video clips on their own may not be problematic.

14.     The volume of USCP video at issue in this case and the different perspectives and capabilities of the cameras at issue raise additional security issues.  Based on representations made by the USCP, the Government has learned that different cameras have different technological

---

[4] The ongoing threat to the U.S. Capitol is not hypothetical.  The USCP and their law enforcement partners are actively preparing for a large-scale rally, "Justice for J6," scheduled for September 18th at Union Square. *See* https://www.washingtonpost.com/dc-md-va/2021/09/02/justice-j6-rally-capitol-riot/ (last accessed September 13, 2021).  The group organizing the rally is promoting the idea that the hundreds of people charged in the January 6 insurrection are political prisoners. *See id.*

capabilities.  For example, some cameras have the ability to pan, tilt and zoom (PTZ),[5] while other cameras do not have that capability.

15.    The USCP videos at issue here come from a variety of different cameras and include at least 15 to 20 minutes of footage (though there could be more), far more than the Government typically offers in public court hearings.  By studying extended footage from multiple different cameras, would-be bad actors would learn valuable information about the capabilities of the cameras, and by extension, the capabilities of the U.S. Capitol's CCTV system.  By viewing all of the footage at issue here, combined with footage that has been made public in other cases, potential bad actors would gain valuable knowledge about the capabilities of the U.S. Capitol's CCTV system, compromising the security of the building and those who work there.

16.    Finally, the cameras themselves also reveal how law enforcement responded to the attack, revealing police tactics and capabilities that could enable the next set of rioters to change their pattern of attack and their weaponry to combat such tactics and overcome law enforcement capabilities. This is particularly true when the smaller confines of the Capitol require officers to use different combat and crowd control techniques than are used exterior to the building.

17.    It is worth noting that the only reason the CCTV footage that Defendant seeks has been released to the public at all is because of a mass assault on the U.S. Capitol Building by a group that included the Defendant himself.  The CCTV footage at issue would otherwise never be made public.  That attack also demonstrates in stark terms the obvious reasons why the USCP do not wish anyone—much less the actual rioters who breached the Capitol just nine months ago— to have the ability to create a virtual map of the facility to allow future breaches.  Defendant is

---

[5] *See* https://en.wikipedia.org/wiki/Pan%E2%80%93tilt%E2%80%93zoom_camera (last accessed September 13, 2021).

entitled to the ability to mount a defense.  He is not entitled, however, to leverage his own criminal

breach of the U.S. Capitol building into the ability to freely disseminate some of the most sensitive

security information about that same facility.

WHEREFORE, for all of the foregoing reasons, the Government has demonstrated good

cause for the Court to issue a protective order governing the production of discovery in this

matter and this Court should enter the order attached to its Motion for Protective Order, ECF No.

16.

Respectfully submitted,

CHANNING D. PHILLIPS
Acting United States Attorney
DC Bar No. 415793


By:      /s/ *Jennifer M. Rozzoni*
JENNIFER M. ROZZONI
Assistant United States Attorney
NM Bar No. 14703
United States Attorney's Office
Detailee
555 Fourth Street, N.W.
Washington, DC 20530
Phone: (505) 350-6818
E-mail: jennifer.m.rozzoni@usdoj.gov