## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA** ) | |
| ) | |
| ) | |
| **v.** ) | Criminal Case No: **1:21-cr-00382** |
| ) | |
| **CHRISTOPHER WARNAGIRIS,** ) | |
| ) | |
| Defendant. ) | |

## NOTICE OF SUPPLEMENTAL AUTHORITY

Defendant hereby notifies the Court of *supplemental authority* from a concurrent January 6 Capitol prosecution, *United States v. Torrens*, 21-cr-204-BAH, in which the Honorable Chief Judge Beryl A. Howell issued a 15-page Order on September 15, 2021, ordering the release of video exhibits to the media after the videos were submitted to the Court by the government as their exhibits during a plea hearing. [Exhibit 1].

The provisions of the Order applicable to this case are Judge Howell's repudiation of the government's arguments regrading security concerns, finding the government's objections as insufficient to block disclosure.

Of note, the arguments presented by the government in the *Torrens* case are very similar to the ones raised in this case. "The government's arguments against disclosure primarily rely on the strength of the asserted privacy interest and the potential prejudice from disclosure. Specifically, the government objects to release of the five videos taken from the U.S Capitol's CCV system on grounds that doing so would create a security risk." Howell Order, p.10.

Judge Howell provides a variety of reasons why the government's argument fails in *Torrens*. Three of the arguments relate directly to the Warnagiris case and the arguments made by the defense and the government in this case.

First, Judge Howell highlights that, "the public has an interest in understanding the conduct underlying the charges in these cases, as well as the government's prosecutorial decision-making both in bringing criminal charges and resolving these charges by entering into plea agreements with defendants." Howell Order, p.12. This is consistent with Supreme Court precedent and precedent set in the District of Columbia. *In re Oliver*, 333 U.S. 257, 270 (1948) ("The knowledge that every criminal trial is subject to contemporaneous review in the forum of public opinion is an effective restraint on possible abuse of judicial power"); *Waller v. Georgia*, 467 U.S. 39, 47 (1984) ("The need for an open proceeding may be particularly strong with respect to suppression hearings. A challenge to the seizure of evidence frequently attacks the conduct of police and prosecutor … The public in general also has a strong interest in exposing substantial allegations of police misconduct to the salutary effects of public scrutiny"); *Gannett Co. v. DePasquale.* See 443 U. S. 368, 380 (1979) ("The requirement of a public trial is for the benefit of the accused; that the public may see he is fairly dealt with and not unjustly condemned, and that the presence of interested spectators may keep his triers keenly alive to a sense of their responsibility and to the importance of their functions"); *In re Leopold to Unseal Certain Electronic Surveillance Applications and Orders*, 964 F.3d 1121, 1127 (D.C. Cir. 2020) (quoting *United States v. Hubbard*, 650 F.2d 293, 317 (D.C. Cir. 1980) (the D.C. Circuit recognizes a "**strong presumption in favor of public access to judicial proceedings**").

Second, Judge Howell discusses the extent of previous public access. While in the *Torrens* case this element weighed "slightly against disclosure," this element weighs in favor of access and disclosure in the Warnagiris case, where, as the defense has pointed out in the *Opposition* filing, the government has already released CCTV footage to the public depicting the conduct at issue. Judge Howell also notes that, "many videos taken from the U.S. Capitol CCV system have been disclosed both through proceedings in the Capitol cases, and during former President Donald Trump's second impeachment proceedings," Howell Order, p.12, an issue the Maj. Warnagiris has also brought to this Court's attention in his *Opposition* filing.

Third, Judge Howell points out that while the government may have a security interest in keeping videos of certain private areas of the Capitol out of public domain, this concern does not liberally extend to public areas that are already depicted in the public domain, noting that, "the areas of the Capitol in the videos are generally open to visitors taking public tours." Howell Order, p.13. Indeed, the same rationale applies to the Warnagiris case, where the area of concern is a front door to the Capitol, which has been depicted publicly in the variety of videos that the government, on its own accord, has already released to the public. "To justify secrecy, the government must articulate a specific threat and may not generally invoke its interests in the security of the U.S. Capitol without articulating how these videos might undermine particular security interests. The concerns articulated in the DiBiase Declaration are simply too generalized to show a risk of prejudice from disclosure of the five videos at issue in this case. Moreover, the government has already released video from inside the Capitol in other cases and even more videos taken by individuals inside the Capitol on January 6 have been made publicly available," writes Judge Howell. Howell Order, p.13-14.

Just as in the Warnagiris case, the government did not explain in *Torrens* how their disclosure of the CCTV video in some instances differs from others, or how the thousands of hours of publicly available video footage from inside the Capitol on January 6 have not negated their alleged concerns. "The government does not explain how the information it seeks to protect could not already be obtained by, for example, reviewing already-public videos taken inside the Capitol, and the government does not articulate a particular threat stemming from the release of these particular videos. As petitioners persuasively argue, the asserted security risk is undercut by the already extensive release of CCV footage from the Capitol," Judge Howell wrote. The government simply does not support the security concerns assertions they made in either the Warnagiris case or the Torrens case.

While the defense notified the government of this supplemental authority on September 21, 2021, the government notified the defense a week later that counsel for the government is "still not in a position to de-designate any CCTV other than what has already been made public." The parties, therefore, remain at a standstill, unable to resolve their dispute over the government's proposed protective order. The government will be filling a joint status report with the Court, outlining the continued disagreement between the parties, seeking the Court's intervention in this matter.

For these reasons and those set out in Maj. Warnagiris' *Opposition* filing, the Court should not grant the government's requested protective order.

Date: September 28, 2021

Respectfully submitted,
By Counsel:

/s/

_____

Marina Medvin, Esq.
*Counsel for Christopher Warnagiris*
MEDVIN LAW PLC
916 Prince Street
Alexandria, Virginia 22314
Tel:  888.886.4127
Email: contact@medvinlaw.com

## **CERTIFICATE OF SERVICE FOR CM/ECF**

I hereby certify that on September 28, 2021, I will electronically file the foregoing with the Clerk of the Court for the United States District Court for the District of Columbia by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

/s/

_____

Marina Medvin, Esq.