# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,

v.

BRUNO JOSEPH CUA,

      *Defendant.*

Criminal Action No. 21-107 (RDM)

## MEMORANDUM OPINION AND ORDER

Defendant Bruno Joseph Cua is charged with twelve offenses related to the breach of the United States Capitol on January 6, 2021. Dkt. 90. Before the Court is Cua's motion to dismiss Count Three of the Second Superseding Indictment pursuant to Federal Rule of Criminal Procedure 12(b)(3)(B). Dkt. 269. That count charges Cua with "forcibly assault[ing], resist[ing], oppos[ing], imped[ing], intimidat[ing], and interfer[ing] with . . . G.L., an officer from the United States Capitol Police Department, while [he] was engaged in and on account of the performance of official duties, and where the acts in violation of this section involve[d] physical contact with the victim and the intent to commit another felony," in violation of 18 U.S.C. § 111(a)(1). Dkt. 90 at 3.

Cua's principal argument is one of statutory interpretation. Although § 111(a)(1) lists six verbs (assault, resist, oppose, impede, intimidate, and interfere), he contends that the statutory structure and legislative history clarify that an "assault" is an essential element of every § 111(a) charge. Under Cua's reading, § 111(a) does not apply, for example, to a person who forcibly interferes with a designated federal official engaged in the performance of her official duties, if that forcible interference does not rise to the level of an assault. The government responds on

1

two levels.  First, it contends that Cua did, in fact, assault G.L.  Second, it argues that an assault, as a matter of law, is not an indispensable element of every § 111(a) charge.  At the parties' request, the Court has scheduled a bench trial on a partially stipulated record, and the Court will consider the government's factual argument at trial, which is scheduled to continue on February 24, 2023.  For present purposes, then, the Court will focus exclusively on the legal question posed by Cua's motion to dismiss.

As explained below, the Court agrees with the government that an assault is not an indispensable element of a § 111(a) charge.  To be sure, many—and perhaps most—§ 111(a) cases will turn on proof of an assault.  But it is also possible to obtain a § 111(a) conviction by proving beyond a reasonable doubt that the defendant "forcibly" impeded or interfered with (or resisted, opposed, or intimidated) a designated federal official in the performance of her official duties and did so with "the intent to commit another felony."  18 U.S.C. § 111(a).

The Court will, accordingly, **DENY** Cua's motion to dismiss pursuant to Federal Rule of Criminal Procedure 12(b)(3)(B)(iii) and (v).

## I. BACKGROUND

The following background is taken from the "statement of facts for stipulated trial" (hereinafter, "SOF"), to which both parties have agreed.  Dkt. 281 at 18–19.  Cua, specifically, "agree[d] and acknowledge[d] by [his] signature that this Statement of Facts is true and accurate," *id.* at 19, and he confirmed the voluntariness of his agreement at a hearing on February 13, 2023.

On January 5, 2021, Bruno Joseph Cua, his mother, and his father, drove from Milton, Georgia to Washington D.C., to attend the *Stop the Steal* rally on January 6, 2021.  *Id.* at 5 (SOF ¶ 8).  In the weeks leading up to January 6, Cua sent a series of private messages on Instagram

and posted on Parler stating that he would be traveling to Washington, D.C. and that "[w]e have to forcefully take our freedom back on Jan 6th;" he also stated that "[w]e want the blood of politicians sp[ilt]" and that "AN ARMY IS COMING TO DC." *Id.* at 13 (SOF ¶ 33(i)–(k)). After hearing President Trump's speech on January 6th, Cua and his parents followed the President's direction to "walk down to the Capitol." *Id.* at 6 (SOF ¶¶ 10–11). At some point, Cua "left his parents' side," and, around 2:30 p.m., "climbed up the scaffolding on the Northwest front of the Capitol building while holding a black asp [(Armament Systems and Procedures)] baton in his hand." *Id.* (SOF ¶¶ 11–12). He reached the Upper West Terrace via the scaffolding, and entered the Capitol through the Upper West Terrace doors (which were affixed with signs stating "EMERGENCY EXIT ONLY") at approximately 2:36 p.m. *Id.* (SOF ¶¶ 13–14). After walking through the doors, Cua encountered five U.S. Capitol Police officers, who had formed a police line a few feet inside and were stopping unauthorized people, including Cua, from entering the building. *Id.* at 7 (SOF ¶ 14). Members of the crowd began chanting, "Let us in!;" Cua yelled "'we have your backs' while holding his cell phone in his right hand and waving the baton in his left hand." *Id.* After "several seconds," the police moved back and the "unauthorized people," including Cua, moved into the Capitol. *Id.*

Upon entering the building, Cua marched through the Capitol carrying his black asp baton, yelling, and attempting to open doors to various rooms. *Id.* at 7–8 (SOF ¶¶ 15–17). He shouted, among other things, "[t]his is what happens when you piss off patriots" and "[w]here are the swamp rats hiding at?" *Id.* at 8 (SOF ¶ 17). Cua eventually made his way to the southeast hallway outside the Senate Gallery, where two on-duty U.S. Capitol Police officers were attempting to lock the doors to the Gallery. *Id.* (SOF ¶ 18). As Cua arrived, an "unauthorized person" called out, "don't let them lock the doors," and grabbed one of the doors

that the officers were attempting to lock. *Id.* Cua moved towards that door and, at approximately 2:42 p.m., "interacted with Officer G.L." in a manner that "involved physical contact with G.L." *Id.* "After several seconds of the interaction, Officer G.L. and the other [U.S. Capitol Police] officers retreated away from the doors without locking them in order to protect themselves." *Id.*

Cua then entered the Senate Gallery, yelling, "This is our house! This is our country!," while still holding his "asp baton." *Id.* at 9 (SOF ¶ 19). While standing on the Senate Gallery overlooking the Senate Floor, Cua said to a "nearby unauthorized person": "If I go down there and open the doors, will you storm?" *Id.* After another unauthorized person jumped from the Senate Gallery onto the Senate Floor, Cua did the same. *Id.* Once on the Floor, Cua "walked directly to the dais at the center of the Senate Chamber, . . . sat in the Vice President's chair, reclined, and put his feet up on the desk." *Id.* (SOF ¶ 20). Around 2:48 p.m., Cua and another individual "went into a vestibule containing doors to the Senate Floor," and, "[a] short time later, more persons were able to enter the Senate through those doors." *Id.* at 10 (SOF ¶ 22). Cua then spent another four minutes or so walking around the Senate Floor, opening at least three desks belonging to U.S. Senators, and continuously recording video on his cell phone. *Id.* Cua left the Senate floor at around 2:52 p.m., and proceeded to leave the Capitol through the Senate Carriage Door about one minute later. *Id.* (SOF ¶¶ 24–25).

Beginning that afternoon, Cua confirmed in a series of Instagram messages that he had "storm[ed] the [C]apitol." *Id.* at 14 (SOF ¶ 33(p)). He wrote, among other things, that he had "fought like hell" and that "[i]f Trump doesn't get Im [sic] we will be back in DC for a blood bath." *Id.* at 15 (SOF ¶ 33(t), (v)). Two days later, he posted on Parler that "[e]veryone who works in [C]ongress is a traitor to the people and deserves a public execution." *Id.* at 16 (SOF

¶ 33(aa)).  On January 9, 2021, he sent private messages on Instagram stating that he was "ready to start shooting" and was "ready to die before [he] watch[ed] America crash and burn."  *Id.* (SOF ¶ 33(bb)).  "I want to lock the swamp rat tyrants in the [C]apit[ol] and burn the place to the ground," he stated.  *Id.* at 17 (SOF ¶ 33(bb)).

Roughly one month later, on February 5, 2021, Cua was arrested pursuant to a criminal complaint.  A grand jury indicted Cua on February 10, 2021, on twelve counts, *see* Dkt. 7, and returned a superseding indictment against him, also charging twelve counts, two months later, *see* Dkt. 32.  He has remained on pretrial release since March 16, 2021.  *See* Dkt. 25.  On December 1, 2021, the grand jury returned a Second Superseding Indictment.  *See* Dkt. 90.  This indictment, the operative charging instrument for present purposes, still includes twelve counts: (I) Civil disorder, in violation of 18 U.S.C. § 231(a)(3); (II) Obstruction of an official proceeding and aiding and abetting, in violation of 18 U.S.C. § 1512(c)(2); (III) Assaulting, resisting, or impeding certain officers, in violation of 18 U.S.C. § 111(a)(l); (IV) Entering and remaining in a restricted building or grounds with a deadly or dangerous weapon, in violation of 18 U.S.C. § 1752(a)(l) and (b)(l)(A); (V) Disorderly and disruptive conduct in a restricted building or grounds, in violation of 18 U.S.C. § 1752(a)(2) and (b)(l)(A); (VI) Engaging in physical violence in a restricted building or grounds, in violation of 18 U.S.C. § 1752(a)(4) and (b)(l)(A); (VII) Entering and remaining on the floor of Congress, in violation of 40 U.S.C. § 5104(e)(2)(A); (VIII) Entering and remaining in the gallery of Congress, in violation of 40 U.S.C. § 5104(e)(2)(B); (IX) Entering and remaining in certain rooms in the Capitol building, in violation of 40 U.S.C. § 5104(e)(2)(C); (X) Disorderly conduct in a Capitol building, in violation of 40 U.S.C. § 5104(e)(2)(D); (XI) Act of physical violence in the Capitol grounds or buildings, in violation of 40 U.S.C. § 5104(e)(2)(F); and (XII) Parading, demonstrating, or picketing in a

5

Capitol building, in violation of 40 U.S.C. § 5104(e)(2)(G).  *See id.*  A bench trial, on a partially

stipulated record, commenced on February 13, 2023 and is scheduled to continue on February

24, 2023.

The pending motion seeks the dismissal of Count Three.

## II. LEGAL STANDARD

Prior to trial, a defendant may move to dismiss an indictment, or specific counts thereof,

on the ground that there is a "defect in the indictment," such as a "failure to state an offense."

Fed. R. Crim. P. 12(b)(3)(B)(v).  But "[b]ecause a court's 'use[] [of] its supervisory power to

dismiss an indictment . . . directly encroaches upon the fundamental role of the grand jury,'

dismissal is granted only in unusual circumstances."  *United States v. Ballestas*, 795 F.3d 138,

148 (D.C. Cir. 2015) (alterations and omissions in original) (quoting *Whitehouse v. U.S. Dist.*

*Ct.*, 53 F.3d 1349, 1360 (1st Cir. 1995)).  "'The operative question is whether the allegations, if

proven, would be sufficient to permit a jury to' conclude that the defendant committed the

criminal offense as charged."  *United States v. Mostofsky*, 579 F. Supp. 3d 9, 14 (D.D.C. 2021)

(quoting *United States v. Sanford, Ltd.*, 859 F. Supp. 2d 102, 107 (D.D.C. 2012)).  "When

considering a motion to dismiss an indictment," the court accordingly "assumes the truth of th[e]

factual allegations" set forth in the indictment.  *Ballestas*, 795 F.3d at 149.

## III. ANALYSIS

Cua argues that Count Three of the Second Superseding Indictment (hereinafter,

"Indictment") should be dismissed because, on his reading of the statute, an assault is an

indispensable element of every § 111(a) violation.  At the outset, the Court questions whether

Cua's motion is properly framed as a motion to dismiss pursuant to Federal Rule of Criminal

Procedure 12(b)(3)(B)(v), since Count Three of the Indictment charges Cua with, among other

things, "forcibly assault[ing]" officer G.L., while he was "engaged in and on account of the performance of [his] official duties," Dkt. 90 at 3, and the Court has scheduled a bench trial on that question, *see* Min. Order (Feb. 13, 2023).  Thus, even under Cua's reading of the statute, the Indictment states an offense.  But because the Court's resolution of the question that Cua raises will determine the scope of the issues for trial, the Court will proceed to decide whether an assault is an indispensable element of a § 111(a) charge.

### A.

The Court begins, as it must, with the text.  *See Sebelius v. Cloer*, 569 U.S. 369, 376 (2013).  Section 111 provides:

(a) In General.—Whoever—

(1) forcibly assaults, resists, opposes, impedes, intimidates, or interferes with any person designated in section 1114 of this title while engaged in or on account of the performance of official duties; or

(2) forcibly assaults or intimidates any person who formerly served as a person designated in section 1114 on account of the performance of official duties during such person's term of service,

shall, where the acts in violation of this section constitute only simple assault, be fined under this title or imprisoned not more than one year, or both, and where such acts involve physical contact with the victim of that assault or the intent to commit another felony, be fined under this title or imprisoned not more than 8 years, or both.

(b) Enhanced Penalty.—Whoever, in the commission of any acts described in subsection (a), uses a deadly or dangerous weapon (including a weapon intended to cause death or danger but that fails to do so by reason of a defective component) or inflicts bodily injury, shall be fined under this title or imprisoned not more than 20 years, or both.

18 U.S.C. § 111.  Those "designated" under the statute include "any officer or employee of the United States or of any agency in any branch of the United States Government."  *Id.* § 1114.  Here, the parties agree that G.L. was a United States Capitol Police officer on January 6, 2021 and that he was "on-duty" outside the Senate Gallery that afternoon.  Dkt. 281 at 8 (SOF ¶ 18).

By its own terms, § 111(a)(1) enumerates six grounds for liability: "assault[ing], resist[ing], oppos[ing], imped[ing], intimidat[ing], or interfer[ing]."  In accordance with its obligation "to give effect, if possible, to every clause and word of a statute," the Court begins with the assumption that each term listed in § 111(a)(1) carries independent meaning.  *Duncan v. Walker*, 533 U.S. 167, 174 (2001) (quoting *United States v. Menasche*, 348 U.S. 528, 538–39 (1955)); *see also United Mine Workers of Am. 1974 Pension Plan v. Energy W. Mining Co.*, 39 F.4th 730, 738 (D.C. Cir. 2022) (same).  Moreover, although the conjunctive "or," which connects the six terms in § 111(a), "can sometimes introduce an appositive—a word or phrase that is synonymous with what precedes it ('Vienna or Wien,' 'Batman or the Caped Crusader')— its ordinary use is almost always disjunctive, that is, the words it connects are to 'be given separate meanings.'"[1]  *United States v. Woods*, 571 U.S. 31, 45–46 (2013) (quoting *Reiter v. Sonotone Corp.*, 442 U.S. 330, 339 (1979)).  In short, the most natural reading of the § 111(a) is that it prohibits not only assaulting a designated person, but also forcibly resisting, opposing, impeding, intimidating, and interfering with a designated person while engaged in the performance of her official duties.

Notably, in one of its few discussions of (a prior version of) § 111(a), the D.C. Circuit assumed that each verb listed in § 111 stands on its own: as the court explained, "the adverb 'forcibly' in the first element of the offense modifies *each of the prohibited acts* specified in the second element."  *United States v. Arrington*, 309 F.3d 40, 44 (D.C. Cir. 2002) (emphasis added); *see also id.* ("[T]hat is, a defendant does not violate the statute unless he *forcibly* assaults or *forcibly* resists or *forcibly* opposes, etc.").  Unsurprisingly given the statutory text, the court failed even to gesture at the possibility that § 111(a) might prohibit only the *single act* of assault.

---

[1]  Although an appositive is a noun or pronoun, the same logic applies to lists of verbs.

*See also United States v. Heid*, 904 F.2d 69, 71 (D.C. Cir. 1990) (noting that the trial court "properly charged" the jury when it "carefully explained . . . that . . . any of the several possible acts listed in section 111 ('assaults, resists, opposes, impedes, intimidates, or interferes') could form the basis for a conviction" but that "it could only convict on a finding that force had either been used or threatened").

The next paragraph of § 111, moreover, further confirms this common-sense reading of the statute. Unlike § 111(a)(1), which applies to currently designated persons, § 111(a)(2) applies to formerly designated persons, and, consistent with that distinction, the list of verbs in subsection (a)(2) is limited to those involving either forcible assaults or forcible intimidation; sensibly, § 111(a)(2) does not prohibit resisting, opposing, impeding, or interfering with a *formerly* designated person. But that difference highlights the fact that, even if the listed verbs may at times overlap, they have different meanings, and the verbs that follow the word "assault" do not merely clarify what it means to "assault" a designated person. *Compare*, *e.g.*, *Assault*, Webster's Third New International Dictionary 130 (1993) ("a violent attack" or "apparently violent attempt"), *with Resist*, Webster's Third New International Dictionary, *supra*, at 1932 ("to withstand the force or the effect of" or "to exert oneself to counteract or defeat"), *with Impede*, Webster's Third New International Dictionary, *supra*, at 1132 (to "hinder" or "block"), *with Oppose*, Webster's Third New International Dictionary, *supra*, at 1583 (to "offer resistance to," "contend against," "forcefully withstand").

Cua offers several rejoinders, all of which start with the penalties clause of § 111(a). That clause differentiates between misdemeanor and felony violations of § 111(a). A defendant commits a misdemeanor "where the acts in violation of this section constitute only simple assault," and a defendant commits a felony "where such acts involve physical contact with the

victim of that assault or the intent to commit another felony."  18 U.S.C. § 111(a).  The penalties

clause, thus, creates three categories of violations:  (1) acts in violation of the statute that

"constitute only simple assault" (the "simple-assault provision"); (2) acts in violation of the

statute the "involve physical contact with the victim of that assault" (the "physical-contact

provision"); and (3) acts in violation of the statute that "involve . . . the intent to commit another

felony" (the "other-felony provision").  In Cua's view, the penalties provision, read as a whole,

lays bare that, despite the multiple verbs listed in the first clause of § 111(a), *every* violation of

§ 111(a) provision requires an "assault."

　　The Court agrees with Cua that the first two provisions require an assault.  Both use the

word assault, and "[w]here a federal criminal statute uses a common-law term of established

meaning without otherwise defining it, the general practice is to give that term its common-law

meaning."  *Moskal v. United States*, 498 U.S. 103, 114 (1990) (quoting *United States v. Turley*,

352 U.S. 407, 411 (1957)).  Applying the definition of "assault" that the parties have agreed to

for purposes of this proceeding, the simple-assault provision applies to an act that constitutes

"only" an "intentional attempt or threat to inflict injury upon someone else, when coupled with

an apparent present ability to do so, that places another in reasonable apprehension of immediate

bodily harm," Dkt. 281 at 3, while the physical-contact provision applies if "that assault"

involves "physical contact with the victim."  That is, the first category involves an assault

without physical contact, and the second category involves an assault with physical contact.

　　The other-felony provision, in contrast, makes no mention of an assault.  Read along with

the prefatory language, it provides as follows:  "Whoever . . . forcibly assaults, resists, opposes,

impedes, intimidates, or interferes with" a designated person "while engaged in or on account of

the performance of official duties . . . *shall*, . . . *where such acts involve . . . the intent to commit*

*another felony*, be fined under this title or imprisoned not more than 8 years, or both." 18 U.S.C. § 111(a) (emphases added). Giving this language its ordinary meaning, then, a defendant can violate the other-felony prong of § 111(a) by, for example, forcibly "interfer[ing] with" a designated person who is engaged in the performance of her official duties, if "such" interference involves "the intent to commit another felony."

Cua takes issue with this reading of the statute and argues that all three § 111(a) categories require an assault, including the other-felony provision. Under his reading of the statute, for example, a person who forcibly interferes with a designated official in the performance of her official duties, without committing an assault, does not violate § 111(a), even if the person acts with the intent to commit another felony. Or, putting things more concretely, a defendant who "forcibly" bars a door to interfere with a federal agent seeking to arrest a suspect, and who acts with the intent to commit a felony, would not violate the statute. In an effort to reconcile this reading of the statute with the text, Cua argues that the other-felony provision "refer[s] . . . back to," and thus implicitly incorporates, "the 'simple assault'" provision. *See* Dkt. 269 at 11. As Cua notes, the physical-contact and other-felony provisions begin with a reference to "such acts," and, on his reading, that locution refers to the acts described in the immediately preceding, simple-assault provision—that is, "acts in violation of [§ 111(a)] constitut[ing] only simple *assault*." Dkt. 268 at 3 (emphasis in original). That interpretation, he argues, is bolstered by "the fact that the physical contact . . . provision references the 'victim of *that* assault,'" *id.* (quoting 18 U.S.C. § 111(a)), suggesting that "the acts covered by the [physical-contact and other-felony provisions] must also be a 'simple assault' plus one of two aggravating factors," *id.*

The Court is unpersuaded and concludes, instead, that the phrase "such acts" refers to the verbs listed in the introductory clause of § 111(a)—"Whoever . . . forcibly assaults, resists, opposes, impedes, intimidates, or interferes with . . . ."  Two textual clues point decidedly in favor of this reading, and against Cua's reading, of the statute.  First, the reference to "such acts" in the final clause of § 111(a) parallels the reference to "acts in violation of this section" in the preceding clause.  Thus, read as a whole, the statute treats violations of § 111(a) as a misdemeanor "*where the acts in violation of this section* constitute only simple assault," and as a felony "*where such acts* involve physical contact with the victim of that assault or the intent to commit another felony."  18 U.S.C. § 111(a) (emphasis added).  There is no question that the statutory reference to "the acts in violation of this section" refers to the verbs listed in the introductory clause—"assaults, resists, opposes, impedes, intimidates, or interferes with"—and the parallel structure of the penalties provisions leaves no doubt that "such acts" refers to the same litany of unlawful conduct.  *See*, *e.g.*, *United States v. Briley*, 770 F.3d 267, 273 (4th Cir. 2014) (noting that the felony provision's "such acts" language refers back to the original list of acts enumerated in § 111(a)(1)).

Second, the simple-assault provision does not list any "acts," making it linguistically challenging to read the subsequent reference to "such acts" as a shorthand for the "acts" identified in the simple-assault provision.  If Congress had intended what Cua suggests, it would have said, "where such an assault" involves the intent to commit another felony.  It did not do so, and, absent other textual evidence, the Court cannot add those words to the statute.  Nor does the statute's reference to "*only* simple assault" implicitly add an assault requirement to the other-felony provision.  In Cua's view, "[t]he inclusion of the word 'only' sets off the misdemeanor from a felony and underscores that a felony conviction requires more than simple assault."  *See*

Dkt. 269 at 11 (emphasis removed).  But, read most naturally, the word "only" does not rank various degrees of assault, distinguishing between misdemeanor assault and felony assault. Rather, the term limits the reach of the misdemeanor provision, distinguishing "acts in violation of" § 111(a) that involve "only"—that is, just—simple assault, from "acts in violation of § 111(a) that involve a physical-contact assault *or* "the intent to commit another felony."  In each circumstance, the first step is to determine whether the defendant committed one of the forbidden acts—that is, forcibly assaulting, resisting, opposing, impeding, intimidating, or interfering with a designated person—and the second step is to determine (1) whether *that act* involved nothing more than a "simple assault," (2) whether it involved assaultive, physical contact, or (3) whether it involved another felony.  If a defendant commits one of the listed acts but that act does not involve any one of three conditions, no violation occurs.  But, if any one of three conditions is satisfied, the defendant has violated the plain terms of the statute.

The "enhanced penalty" provision found in § 111(b) further supports the conclusion that the statute first asks whether the defendant committed one of the listed acts and then defines the appropriate penalty based on the nature and gravity of *that act*, which may—but need not— involve an assault.  Under the enhanced penalty provision, anyone who, "in the commission of *any* acts described in subsection (a), uses a deadly or dangerous weapon . . . or inflicts bodily injury, shall be fined under this title or imprisoned not more than 20 years, or both."  18 U.S.C. § 111(b) (emphasis added).  "[T]he word 'any' has an expansive meaning," *United States v. Gonzales*, 520 U.S. 1, 5 (1997), and, absent some contrary textual indicia, it means "one indifferently out of more than two," *Any*, Webster's Third New International Dictionary, *supra*, at 97.  By using the phrase "*any* acts," Congress accordingly made clear that the listed verbs are disjunctive and that the commission of *any* of those acts is sufficient; although most forcible acts

involving the use of a deadly or dangerous weapon or the infliction of bodily injury will constitute an assault, the statute does not require an assault to violate § 111(b).  And there is no reason to believe that a violation of § 111(a), which involves lesser penalties, requires more than § 111(b).

In short, Cua's proposed reading of § 111(a) would require the Court to violate three tenets of statutory interpretation.  First, it would require the Court to read "absent word[s] into the statute," *Lamie v. U.S. Trustee*, 540 U.S. 526, 538 (2004), making the other felony provision applicable "where such acts involve . . . [*an assault with*] the intent to commit another felony." Second, it would require the Court to disregard its obligation "to give effect, if possible, to every clause and word of a statute," *Duncan*, 533 U.S. at 174 (quoting *Menasche*, 348 U.S. at 538–39), by reading all of the verbs following "assaults" out of the statute.  Third, it would require the Court to ignore the presumption that words and phrases listed in the disjunctive should be given "separate meaning."  *Woods*, 571 U.S. at 45; *see also Genus Med. Techs. LLC v. U.S. Food & Drug Admin.*, 994 F.3d 631, 638 (D.C. Cir. 2021) (describing the canon that a "statute should be construed [to give effect] to all its provisions, so that no part will be inoperative or superfluous, void or insignificant" (alteration in original) (quoting *Corley v. United State*s, 556 U.S. 303, 314 (2009))).  To be sure, rules of construction are not cast in stone and should, when necessary, give way to a common-sense construction of the statutory text.  But here, the rules of construction and a common-sense reading of the statute favor the same result.

None of Cua's remaining counterarguments is persuasive.

*First*, he argues that the six verbs enumerated in § 111(a)(1) are part of an "iterative list" for which "the canon to avoid superfluous language . . . does not apply."  Dkt. 269 at 16. Because, in Cua's view, those terms have overlapping meaning, it is impossible to give each

term independent meaning. *Id.* For support, he invokes the Supreme Court's decision in *McNally v. United States*, 483 U.S. 350 (1987), which addressed a statute criminalizing "any scheme or artifice to defraud, *or* for obtaining money or property by means of false or fraudulent pretenses, representations, or promises." 18 U.S.C. § 1343 (emphasis added). *See* 483 U.S. at 358. In *McNally*, the Court declined to construe the statute's two principal phrases "in the disjunctive" because Congress had, in adding the latter phrase, codified language from an earlier Supreme Court case that had defined what it meant to "defraud" someone. *Id.* at 358–59. "As [the Supreme Court] s[aw] it, adding the second phrase simply made it unmistakable that the statute reached false promises and misrepresentations as to the future as well as other frauds involving money or property." *Id.* at 359. The latter phrase, in other words, helped define the earlier one, rather than adding disjunctive, independent meaning.[2]

Unlike the clause at issue in *McNally*, however, the verbs listed in § 111(a) are neither synonymous nor illustrative. *Cf. Woods*, 571 U.S. at 46 (concluding that terms connected by the conjunctive "or" must have their "independent and ordinary significance" where there was "no way" that the two words "could be regarded as synonymous" (internal quotation marks

---

[2] Cua also cites the Supreme Court's decision in *United States v. Olano*, 507 U.S. 725 (1993), which interpreted an earlier version of Federal Rule of Criminal Procedure 52(b). Rule 52(b) provided that, on appeal, "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." *Id.* In *Olano*, the Supreme Court declined to read "error or defect" in the disjunctive, concluding instead that "the phrase 'error or defect' is more simply read as 'error.'" 507 U.S. at 732 (citing *United States v. Young*, 470 U.S. 1, 15 n.12 (1985)). That conclusion rested, in relevant part, on the conclusion that "[t]he [Advisory] Committee's use of the disjunctive in the phrasing of the Rule is misleading," because it "may simply be a means of distinguishing for definitional purposes between 'errors' (e.g., exclusion of evidence) and 'defects' (e.g., defective pleading), and in either case the Rule applies only to errors affecting substantial rights." *Young*, 470 U.S. at 15 n.12. No such "misunderstanding" is evident here, and, in any event, the Supreme Court has recently reaffirmed that "'or' is 'almost always disjunctive.'" *Encino Motorcars, LLC v. Navarro*, 138 S. Ct. 1134, 1141 (2018) (quoting *Woods*, 571 U.S. at 45).

omitted)).  As explained above, one can forcibly "impede[]" or "interfere[] with" a federal

officer or employee without committing an "assault[]," that is, without "intentional[ly]

attempt[ing] or threaten[ing] to inflict injury upon [him]."  *See* Dkt. 273 at 1.  Indeed, were it

otherwise, Cua would have little reason to resist a reading of the statute that reaches forcible

interference in the absence of an assault.  Nor can the Court embrace the notion that statutory

terms that have *overlapping* meaning cannot have *independent* import.  Indeed, the very reason

that Congress uses lists of terms that have overlapping meaning is to ensure that no conduct that

it intends to reach falls in the gap between terms.  Overlapping terms are used to ensure the

breadth of coverage, not to restrict the meaning of a term merely because it follows another term

having a different and at times narrower meaning.

  *Second*, Cua argues that out-of-circuit caselaw "holding that an assault is not required to

violate section 111(a) do[es] no better at giving meaning to all parts of the text," Dkt. 269 at 16,

and that the Court, therefore, cannot avoid adopting an interpretation that renders at least *some*

statutory language superfluous.  But the cases Cua cites for this proposition adopt an altogether

different interpretation of § 111(a) than this Court embraces today.  The Fifth Circuit has, for

example, concluded that even "a misdemeanor conviction" (which follows "where the acts in

violation of this section constitute only simple assault," 18 U.S.C. § 111(a)) "does not require

underlying assaultive conduct."  *United States v. Williams*, 602 F.3d 313, 318 (5th Cir. 2010);

*see also United States v. Gagnon*, 553 F.3d 1021, 1027 (6th Cir. 2009) (adopting the same

interpretation of the same misdemeanor provision, though interpreting a prior version of the

statute).  The Fourth Circuit concurs and adds, moreover, that an "assault" is not required for a

physical-contact felony conviction.  *Briley*, 770 F.3d at 273–74.

The Court agrees with Cua that these decisions misconstrue § 111(a). They read the phrase "simple assault" and "that assault" out of the first two clauses of the penalties provision. They conflate the distinct verbs listed in the prefatory clause of § 111(a) and then, without textual foundation, treat the phrase "assault" as a shorthand for "the forcible performance of any of the six proscribed actions." *Gagnon*, 553 F.3d at 1027. And they say nothing about the Supreme Court's admonition that, "where a federal criminal statute uses a common-law term of established meaning without otherwise defining it, the general practice is to give that term its common-law meaning." *Moskal*, 498 U.S. at 114 (1990) (quoting *Turley*, 352 U.S. at 411).

But Cua's argument suffers from a similar failure to adhere to the statutory text, which does not treat proof of an assault as an all-or-nothing requirement: instead, under the plain terms of the statute as Congress wrote it, an assault is required under the simple-assault and physical-contact provisions, but not under the other-felony provision—or, indeed, under the enhanced penalty provision. As the Second Circuit explained in *United States v. Davis*, 690 F.3d 127 (2d Cir. 2012), the phrase "simple assault" in § 111(a) should be accorded its "longstanding and precise meaning under the common law." *Id.* at 136. But "ascribing 'simple assault' its common law meaning," *id.*, does not "render[] superfluous the [non-assault] forms of conduct proscribed by § 111(a)(1)." *Id.* (second alteration in original) (quoting *Williams*, 602 F.3d at 317). Rather, "the statute's five non-assault acts would appear to be criminally prohibited by the [other-]felony clause 'where such acts involve . . . the intent to commit another felony.'" *Id.* at 136–37 (quoting 18 U.S.C. § 111(a)). Reading the statute in this manner, thus, avoids running "afoul of the preference against 'interpretations of statutes that render language superfluous.'" *Id.* at 137 (quoting *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253 (1992)). By parsing the statutory text in this way, the Court can avoid both the superfluity concerns raised by the

government and those that Cua raises and can—to borrow Cua's words—"giv[e] meaning to all parts of the text." Dkt. 269 at 16.

*Third*, the Court is unpersuaded that this reading of § 111(a) would lead to absurd results. Cua contends, for example, that "if a defendant resisting arrest by a federal officer made the unfortunate decision to punch[] an officer but missed (a simple assault), he would receive a misdemeanor, but if he controlled his urge and refrained from swinging his fist at the officer and attempting to injure him, he would be guilty of a felony for the exact same resistance." Dkt. 269 at 12. But that hypothetical ignores the operative language in § 111(a)'s penalty provision, which applies only where the acts enumerated in (a)(1) either "involve physical contact with the victim of that assault or the intent to commit another felony." Given this language, if Cua's hypothetical defendant refrained from swinging his fist at the officer, he would be "guilty of a felony for . . . [his] resistance" only if his actions "involve[d] . . . the intent to commit another felony." If, on the other hand, he resisted arrest, refrained from swinging his fist, and did not intend to commit another felony, he would not violate § 111. And, if he resisted arrest, swung his fist (but missed), but did not intend to commit another felony, he would be guilty of a misdemeanor. Far from raising an absurdity, this allocation of potential criminal liability makes perfect sense.[3]

---

[3] The same analysis addresses Cua's concern that, "if 'assault' is included in [an] indictment, but the factfinder determines that no assault occurred," then "what would otherwise be a misdemeanor is converted into a felony." Dkt. 269 at 13. That concern is, again, misplaced because the existence of an assault, in itself, does not transform a felony into a misdemeanor (or vice versa) under § 111(a).

**B.**

Because the statutory text is unambiguous, the Court "need not resort to legislative history to decipher what the Congress intended," *Eagle Pharms., Inc. v. Azar*, 952 F.3d 323, 339 (D.C. Cir. 2020), or "to cloud a statutory text that is clear," *Nat'l Shooting Sports Found., Inc. v. Jones*, 716 F.3d 200, 212 (D.C. Cir. 2013) (quoting *Ratzlaf v. United States*, 510 U.S. 135, 147–48 (1994)). But, even if the Court were to consider the legislative history of § 111, the Court's conclusion would remain unchanged.

As relevant here, the current version of § 111(a) was enacted as part of the Court Security Improvement Act of 2007.[4] *See* Pub. L. No. 110-177, § 208(b), 121 Stat. 2534, 2538 (2008). The Senate had unanimously passed an earlier version of the bill in April 2007, but that version of the legislation did not amend § 111, *see* 153 Cong. Rec. S4743 (daily ed. Apr. 19, 2017), and, in any event, "minor differences between" the Senate bill and a "nearly identical bill passed [by] the House" prevented final enactment of the legislation, *see* 153 Cong. Rec. S15789 (daily ed. Dec. 17, 2007) (statement of Sen. Patrick Leahy). Finally, in December 2007, the logjam broke, and Senator Leahy introduced a "compromise version" of the legislation, which he anticipated would pass both houses of Congress and could "be sent to the President." *Id.*

Following Senator Leahy's remarks on the final version of the legislation, Senator Kyl—who was not a sponsor of the bill—offered his "comment[s] on H.R. 660," the earlier, House-passed version. *Id.* (statement of Sen. Jon Kyl). As relevant here, he described § 208 of the legislation as follows:

> Section 208 [of the bill] increases the penalties for retaliatory assaults against
> Federal judges' family members. This provision also clarifies an assault offense

---

[4] In November 2021, Congress added a provision to § 111 establishing "extraterritorial jurisdiction over the conduct prohibited by" the statute. Pub. L. No. 117-59, § 3, 135 Stat. 1468, 1469 (2021). That amendment has no bearing on this case.

19

that was created by Congress in 1994. The offense establishes penalties for simple assault, assault with bodily injury, and assault in "all other cases." As one might imagine, the meaning of assault in "all other cases" has been the subject of confusion and judicial debate. The offense has also been the subject of constant vagueness challenges, and although those legal challenges have been rejected, the offense is rather vague. Section 208 takes the opportunity to correct this legislative sin, codifying what I believe is the most thoughtful explanation of what this language means, the 10th Circuit's decision in *United States v. Hathaway*, 318 F.3d 1001, 1008–09, 10th Cir. 2003. A conforming change has also been made to section 111 of title 18, so that sections 111 and 115 will match each other and, again, so that people can easily figure out what this offense actually proscribes.

*Id.* at S15789–90. Cua seizes on Senator Kyl's statement to argue that § 111, invariably, requires an assault. The Court is unpersuaded.

As an initial matter, the Court notes that "floor statements by individual legislators"— here, a member who was not even a co-sponsor of the legislation—"rank among the least illuminating forms of legislative history." *NLRB v. SW Gen., Inc.*, 580 U.S. 288, 307 (2017). That is a problem for Cua's argument. But, even moving beyond that difficulty, Senator Kyl's statement is less helpful than Cua suggests. The statement is ambiguous in important respects, but it appears that the bulk of the statement is directed at a different section of the criminal code—18 U.S.C. § 115(b). Prior to enactment of the Court Security Improvement Act, that section did incorporate the penalties provisions contained in 18 U.S.C. § 111. *See* 18 U.S.C. § 115(b)(1) (2002) ("An assault in violation of this section shall be punished as provided in section 111 of this title."). But what Cua misses is that, unlike § 111, § 115(b)(1) applied only to assaults, *id.*, and thus any incorporation of § 111 was, by definition, limited to assaults. It is therefore unsurprising that Senator Kyl's comments focus on assaults.

To be sure, Senator Kyl does refer to § 111, but only briefly in the final sentence of the paragraph quoted above; consistent with the legislation, he notes that the amendment to § 111 was simply a "conforming change" adopted "so that sections 111 and 115 w[ould] match each

20

other."  153 Cong. Rec. S15790 (daily ed. Dec. 17, 2007).  Nor is it surprising that Senator Kyl made only passing reference to § 111, since that "conforming change" was not included in the House-passed version of the bill and was only added to the legislation on the same day that Senator Leahy introduced the final version of the legislation and that Senator Kyl offered his comments.  153 Cong. Rec. S15777 (Dec. 17, 2007); *see also* H.R. 660, 100th Cong. (2007). That late introduction of this "conforming amendment" also explains why § 208 of the legislation—which, up until the last moment, dealt exclusively with the assault provisions of § 115—was entitled "Assault Penalties."  Pub. L. No. 110-177, § 208, 121 Stat. 2534, 2538 (2008).

The single sentence that Senator Kyl does devote to § 111, moreover, fails to answer the question whether Congress intended to conform the two statutes (1) by requiring an assault in both—which seems improbable given the broader, operative language of § 111, which was left unchanged—or (2) by creating separate penalty provisions for violations (however defined) that constitute only simple assault, those that involve assault involving physical contact, and those that involve the intent to commit another felony.  But, had Congress intended to require an assault for each category, it could have easily tracked the language used in § 115, which—as relevant here—provides that, "if *the assault* involved . . . the intent to commit another felony," the statutory maximum sentence is ten years.  18 U.S.C. § 115(b)(1)(B)(ii) (emphasis added). Instead, Congress provided that "where such acts"—that is, the acts of forcibly assaulting, resisting, opposing, impeding, intimidating, or interfering with—"involve . . . the intent to commit another felony," the statutory maximum sentence is eight years.  *Id.* § 111(a).

Nor does Senator Kyl's mention of the Tenth Circuit's decision in *United States v. Hathaway*, 318 F.3d 1001 (10th Cir. 2003), provide significant guidance on the question of

whether each and every violation of § 111 requires an assault.  In that case, the defendant,

Richard Hathaway, confronted a Social Security Administration ("SSA") agent outside of his

home, apparently angry that "the[] [agent] [was] looking in his window."  *Id.* at 1003–04.

Hathaway "admittedly pushed the SSA agent in the chest and grabbed him by his tie, thereby

choking him, telling [the agent] 'I don't care who you are, you little twirp'" and, ultimately,

leaving the agent "bruis[ed]."  *Id.* at 1004.  The indictment in that case charged that Hathaway

"did knowingly and intentionally forcibly assault, resist, oppose, impede[], intimidate, and

interfere with Social Security Administration Special Agent, Bruce McKimens, while he was

engaged in and on account of the performance of his official duties, in violation of [18 U.S.C]

111."  *Id.*

> At the time that Hathaway was charged, § 111 looked different than it does today.  It
>
> provided:

> (a) In General.—Whoever—
>
> > (1) forcibly assaults, resists, opposes, impedes, intimidates, or interferes
> > with any person designated in section 1114 of this title while engaged in
> > or on account of the performance of official duties . . .
>
> shall, where the acts in violation of this section constitute only simple
> assault, be fined under this title or imprisoned not more than one year, or
> both, and *in all other cases*, be fined under this title or imprisoned not more
> than three years, or both.

18 U.S.C. § 111(a) (1996); *see also* Pub. L. No. 103-322, 108 Stat. 1796, 2108 (1994).

Hathaway argued at sentencing and in the Tenth Circuit that he could be imprisoned for "not

more than one year" because, "in his view, the indictment and the jury instructions charged only

a misdemeanor violation of § 111 involving simple assault."  318 F.3d at 1005.  But even though

the indictment charged Hathaway in the conjunctive with each of the six verbs enumerated in

§ 111(a), the Tenth Circuit accepted the premise that he had committed an assault, and it focused

exclusively on whether that assault was a "simple assault" or, in the words of the Tenth Circuit, an "'all other cases' assault." *Id.* at 1008.

The Tenth Circuit, to be sure, did use sweeping language, opining (1) that "an 'all other cases' assault under § 111(a) include[d] any assault that involves actual physical contact or the intent to commit murder or any felony other than those" excluded under 18 U.S.C. § 113(a)(2), and (2) that to obtain a felony conviction under § 111(a), the government must prove "one of these two elements." *Id.* at 1008–09.  The parties, however, agreed that the case involved an assault, and the defendant argued only that because "the indictment and the jury instructions failed to distinguish between simple assault [which was misdemeanor] and non-simple assault [which was a felony]," the district court erred in entering a felony conviction against him.  *Id.* at 1003.  The court's analysis made no mention of the other verbs listed in § 111(a).  It is, accordingly, a stretch too far to argue that *Hathaway* held that § 111(a), invariably, requires an assault.  That question was neither presented nor decided.

But, in any event, Senator Kyl's reference to *Hathaway* in his discussion of the proposed amendment to § 115(b) provides little guidance regarding the meaning of § 111.  As noted above, § 115(b)(1) addresses only "assault[s] in violation of [that] section," 18 U.S.C. § 115(b)(1), and although *Hathaway* involved a violation of § 111, it addressed only whether the assault in that case was a simple or non-simple assault.  As a result, even if the language of § 111(a) were ambiguous—and it is not—this snippet of legislation history—a single sentence contained in a floor statement that refers to a conforming amendment offered that very day— would not move the needle.  At a bare minimum, the Court cannot use an ambiguous floor statement to divine the meaning of statutory text that is, by any measure, clearer than the floor statement.

**C.**

The Court is also unpersuaded that the rule of lenity weighs in favor of limiting the reach of § 111 to cases in which the defendant committed an assault.  The rule of lenity "only applies if, after considering text, structure, history, and purpose, there remains a 'grievous ambiguity or uncertainty in the statute,' such that the Court must simply guess as to what Congress intended." *Barber v. Thomas*, 560 U.S. 474, 488 (2010) (citation omitted) (quoting *Muscarello v. United States*, 524 U.S. 125, 139 (1998)); *see also Shular v. United States*, 140 S. Ct. 779, 787 (2020) (holding that the rule of lenity applies only after the court has applied the traditional tools of statutory construction and is "left with an ambiguous statute" (quoting *United States v. Shabani*, 513 U.S. 10, 17 (1994))).  This is not such a case.  As explained above, the statutory language unambiguously extends to individuals who, for example, "forcibly . . . interfere[] with a[] . . . [designated person] . . . while engaged in or on account of the performance of official duties . . . [and] where the acts in violation of this section . . . involve . . . the intent to commit another felony."  18 U.S.C. § 111(a).  The Court, accordingly, is not left "simply [to] guess as to what Congress intended."  *Barber*, 560 U.S. at 488.

**D.**

Finally, the Court is unpersuaded by Cua's contention that Count Three should be dismissed for failing "fairly" to "inform[]" him "that an assault is a required element . . . under section 111(a)."  Dkt. 269 at 21.  In particular, he argues that the indictment does "not properly charge[] him under section 111(a) by failing to require a finding of assault."  *Id*. at 22.  Each iteration of this argument that Cua offers fails.

He first argues that the indictment fails because it does not track the statute, which does require an "assault" to violate the physical-contact provision.  *Id*.  Count Three of the Indictment

charges, as relevant to the physical-contact provision, that Cua "did forcibly assault, resist, oppose, impede, intimidate, and interfere with . . . G.L., an officer from the United States Capitol Police Department, . . . where the acts in violation of this section involve physical contact with the victim." Dkt. 90 at 3. In Cua's view, Count Three must be dismissed because it "omit[s] a key phrase"—that is, "physical contact with the victim *of that assault*." Dkt. 269 at 22.

The Federal Rules of Criminal Procedure require that an indictment consist of "a plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1). "[A]n indictment is sufficient if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." *Hamling v. United States*, 418 U.S. 87, 117 (1974); *see also United States v. Williamson*, 903 F.3d 124, 130 (D.C. Cir. 2018) (explaining that the indictment "need only inform the defendant of the precise offense of which he is accused so that he may prepare his defense and plead double jeopardy in any further prosecution for the same offense" (quoting *United States v. Verrusio*, 762 F.3d 1, 13 (D.C. Cir. 2014))). Even without the "of that assault" language, Count Three sufficiently sets forth "the elements of the offense charged" and "fairly informs [Cua] of the charge against which he must defend." *Hamling*, 418 U.S. at 117. As explained above, Cua can only be convicted under the physical-contact provision if he "assault[ed]" Officer G.L., and the Indictment, in fact, charges him with "assault[ing]" Officer G.L. (as well as "resist[ing], oppos[ing], imped[ing], intimidat[ing], and interfer[ing] with" him). Dkt. 90 at 3. In the context of that assault charge, it is immaterial whether Count Three charges Cua with assaulting "[Officer] G.L. . . . where th[at] act[] in violation of this section involve[d] physical contact with the victim," *id.*, or assaulting him "where [that] act[] . . . involve[d]

physical contact with the victim *of that assault*," 18 U.S.C. § 111(a).  In the context of the assault

charge, Count Three clearly "inform[s] [Cua] of the precise offense of which he is accused," so

that he can both "prepare his defense" and "plead double jeopardy in any further prosecution for

the same offense."  *Williamson*, 903 F.3d at 130.

  Second, Cua argues that "the indictment fails to specify that in order to convict [him] on

the basis of resisting, impeding, intimidating, [or] interfering with Officer G.L, the government

must provide that such acts involved an assault."  Dkt. 269 at 22.  And, third, he argues that "the

indictment fails to specify that, in order to convict [him] of a felony violation . . . based on [an]

intent to commit another felony . . . [,] the government must prove" that he committed "an

assault."  *Id.*  For all the reasons discussed at length above, the major premise of both of these

arguments is incorrect and thus the arguments fail.

**CONCLUSION**

  For the foregoing reasons, Cua's motion to dismiss Count Three of the indictment, Dkt.

269, is hereby **DENIED**.

  **SO ORDERED**.

/s/ Randolph D. Moss
RANDOLPH D. MOSS
United States District Judge

Date:  February 22, 2023