# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA** ) | |
| ) | |
| **v.** ) | CRIMINAL CASE NO: 1:21-CR-0382-PLF |
| ) | |
| **CHRISTOPHER WARNAGIRIS**, ) | TRIAL: NOVEMBER 8, 2023 |
| ) | |
| DEFENDANT. ) | |

## DEFENDANT'S TRIAL BRIEF

The defense submits this trial brief for the purpose of notifying the court of consequential issues bearing on this case — elucidating essential definitions and highlighting key elements that are in dispute.

## I. DEFINITIONS

### A. Defining "An Act of Physical Violence"

Counts Six and Eight punish "an act of physical violence." *See* 18 U.S.C. § 1752(a)(4); 40 U.S.C. § 5104(e)(2)(F).

The phrase "an act of physical violence" is specifically defined in 40 U.S.C. § 5104(a)(1) as "any act involving— (A) an assault or other infliction or threat of infliction of death or bodily harm on an individual; or (B) damage to, or destruction of, real or personal property."

Assault is not defined in the U.S. Code.

Counts Six and Eight, accordingly, just as Count Three, require this court to define assault.

**B.   <u>Defining Assault</u>**

Counts Three, Six, and Eight require the court to define assault. *See* 18 U.S.C. § 111; 18 U.S.C. § 1752(a)(4); 40 U.S.C. § 5104(e)(2)(F); 40 U.S.C. § 5104(a)(1). The U.S. Code fails to define assault.

When a term is not defined in the Code, the Supreme Court directs us to look at common law, unless there are "contrary indications." *See United States v. Shabani*, 513 U.S. 10 (1994). *Simple assault*, the term used in Section 111, indeed has contrary indications that direct the definition as one outside of common law *assault and battery. See, e.g., United States v. Feola*, 420 U.S. 671 (1974) (distinguishing § 111 as unique to the federal code and distinct from state-level assault offenses).

In 18 U.S.C. § 111, Congress uses the term "simple assault," a term not utilized in common law assault cases. Common law utilized the term "assault and battery." Indeed, the Supreme Court determined that § 111 was not a common law crime, and "Congress was not enacting § 111 as a federal counterpart to state proscriptions of aggravated assault." *See United States v. Feola*, 420 U.S. 671, 684 (1974). Instead, the Supreme Court determined that § 111 was intended to serve the independent function of protecting federal officers. *Id*. Therefore, Congress increased the penalties for assault of federal officers from what such crimes would have been under state law or under common law. Section 111 is not a common law assault crime.

For example, what would be misdemeanor battery under common law *assault and battery* is converted to a *felony assault* with physical contact under § 111(a)'s physical contact prong. An assault with the contemporaneous intent to commit another felony, which would remain a misdemeanor assault under common law, has been elevated to an *aggravated felony assault* under 18 U.S.C. § 111(a) and corresponding Sentencing Guideline U.S.S.G. §2A2.2.[1] Accordingly, the federal assault on law enforcement statute is not one borne of common law.[2]

And, unlike at common law, Congress relied on a different set of definitions for their terms — a concrete set. The specific language used in Chapter 7 of the U.S. Code, the assaults chapter, is one that is specific to the Model Penal Code. Unlike the uniformity of the Model Penal Code, common law assault was "defined in various ways." *See Beausoliel v. United States*, 107 F.2d 292, 295-96 (D.C. Cir. 1939); *see also Edwards v. State*, 4 Ga. App. 167, 169 (1908) (discussing the varying definitions of common law assault).

Pursuant to the Model Penal Code, and consistent with *United States v. Feola*, 420 U.S. 671 (1974), the D.C. Circuit has defined simple assault under the phrasing of the Model Penal

---

[1] To see this, simply compare the penalties under U.S.S.G. §2A2.2, the aggravated assault sentencing enhancement for conviction under § 111(a) under the prong *with the intent to commit another felony*, with the penalties under U.S.S.G. §2A2.3 for regular assaults with and without physical contact. The base offense level for misdemeanor assault is 4, the base offense level for felony assault with physical contact is 7, and the base offense level for an aggravated assault is 14, which is defined, in part, as an assault with the intent to commit another felony. Such penalty grading and distinction between assaults are inconsistent with common law and are instead seen in the Model Penal Code. *See* MODEL PENAL CODE § 211.1 (1985).

[2] As argued in ECF No. 57, the federal criminal assault code utilizes the language of the Model Penal Code in discussing variations of assaults. Key phrases from Model Penal Code, terms such as "bodily injury," appear in *almost all of the assault charges listed in Chapter 7 of the U.S. Code*, which punishes assaults under federal law. Look at 18 U.S.C. § 111, 18 U.S.C. § 112, 18 U.S.C. § 113, 18 U.S.C. § 115, and 18 U.S.C. § 117 — each of these assault statutes references *bodily injury*, directly invoking the language of the Model Penal Code. Conspicuously missing from Chapter 7 of the U.S. Code is the term *battery*, a staple of common law assault, as well as any reference to offensive touching. *See, e.g., Johnson v. United States*, 130 S. Ct. 1265, 1267 (2010) (the common-law crime of battery was satisfied by even the slightest offensive touching). The U.S. Code only discusses assaults with a minimum of *bodily injury* — directly invoking the Model Penal Code. While the common law distinguished between an assault and a battery by even the slightest offensive touching, the Model Penal Code did not utilize the battery distinction at all, nor its definition— instead grouping assault and battery into a single offense, just as we see in Section 111(a). The Model Penal Code then *grades* assaults as simple or aggravated. *See* MODEL PENAL CODE § 211.1 (1985). The Model Penal Code specifically contains the term "simple assault." *Id.*

Code. *See United States v. Duran*, 96 F.3d 1495, 1509 (D.C. Cir. 1996); s*ee also Voisine v. United States*, 136 S. Ct. 2272, 2278 (2016) (applying Model Penal Code to the definition of reckless assault); *Burrage v. United States*, 134 S.Ct. 881 (2014) (applying the Model Penal Code definitions to 18 U.S.C. § 841); *United States v. Dworken*, 855 F.2d 12, 16 (1st Cir. 1988) (choosing to apply the Model Penal Code definitions to federal statutes "to achieve a modicum of consistency").

In precedent binding on this court, the D.C. Circuit held that the term "simple assault" is defined as an (a) attempt to cause or purposely, knowingly or recklessly cause bodily injury to another; or (b) negligently cause bodily injury to another with a deadly weapon; or (c) attempt by physical menace to put another in fear of imminent serious bodily injury. *Duran*, 96 F.3d at 1509 (applying the MODEL PENAL CODE § 211.1 (1985)).

In keeping with consistency, it follows that all assaults under federal law should be defined in the same manner. *See Voisine v. United States*, 136 S. Ct. 2272, 2278 (2016) (applying Model Penal Code to the definition of reckless assault); *United States v. Dworken*, 855 F.2d 12, 16 (1st Cir. 1988) (applying Model Penal Code definitions to federal statutes "to achieve a modicum of consistency"); *see also Martinez v. ATTY. GEN.*, 906 F.3d 281 (3d Cir. 2018). Accordingly, for all assault issues applicable to Counts Three, Six, and Eight, the definitions should be ones from the Model Penal Code.

Of note, in *United States v. Matthew DaSilva*, Judge Nichols applied the Model Penal Code definitions to bench instructions for 18 U.S.C. § 111, 18 U.S.C. § 1752(a)(4), and 40 U.S.C. § 5104(e)(2)(F), commenting at the reading of the court's verdict that the Court was

bound by precedent from *Duran*.[3] *See United States v. DaSilva,* 1:21-cr-00564-CJN, ECF No. 76 (July 13, 2023); *United States v. Duran*, 96 F.3d 1495, 1509 (D.C. Cir. 1996).[4]

<u>Additional definitions for assault</u>:

The following additional Model Penal Code definitions are essential for legal instructions that accompany the definition of assault:

- "Bodily injury" means physical pain, illness, or any impairment of physical condition. Model Penal Code § 210.0(1).

- "Serious bodily injury" means bodily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ. Model Penal Code § 210.0(2). *See also United States v. DaSilva,* 1:21-cr-00564-CJN, ECF No. 76 (July 13, 2023).

- An "attempt" is a purposeful act or omission that constitutes a substantial step in a course of conduct planned to culminate in the commission of the crime. Model Penal Code § 5.01(1)(c).

- A "substantial step" is an act that is strongly corroborative of the actor's criminal purpose. Model Penal Code § 5.01(2); *See also United States v. DaSilva,* 1:21-cr-00564-CJN, ECF No. 76 (July 13, 2023).

---

[3] For full disclosure, undersigned counsel represented the defendant in *United States v. DaSilva* and made similar arguments to the ones being made before this court in request of the Model Penal Code definitions to be applied.

[4] According to defense attorneys practicing before him, after the *DaSilva* case, Judge Nichols began applying the Model Penal Code definition of assault to all cases before him.



**C.   Defining "Forcibly" As Used in § 111(a)**

Force is not defined in Chapter 7 and therefore requires the application of its ordinary

meaning. *See Johnson v. United States*, 130 S. Ct. 1265, 1270 (2010).

Force means using strength, power, and violence against another person. *Id*. This is a

degree of power that is not satisfied by mere touching. *Id*. Instead, this has to be a force capable

of causing physical pain or injury to another person. *Id*. at 1271.

As discussed *supra*, the Supreme Court has already opined that § 111 is not equivalent to

common law assault and battery and is instead a statutory crime. See *United States v. Feola*, 420

U.S. 671 (1974). The common law meaning of force is therefore not applicable to this statute,

with the ordinary meaning of force controlling the definition. *See Johnson v. United States*, 130

S. Ct. 1265, 1271-72 (2010). This interpretation is also consistent with the Ninth, Tenth, and

Eleventh Circuits which have held that any conviction under § 111(a) requires a minimum

finding of assault, and the Third Circuit, which has held that any conviction under § 111(a) is a

crime of violence. *See United States v. v. Rivera-Alonzo*, 584 F.3d 829 (9th Cir. 2009) (finding

that assault is required for any conviction under § 111(a) and that simple assault is a lesser-

included offense of any felony under § 111); *United States v. Wolfname*, 835 F.3d 1214 (10th Cir.

2016) ("a § 111(a)(1) conviction for resisting, opposing, impeding, intimidating, or interfering …

necessarily involves — at a minimum — simple assault"); *United States v. Martinez*, 486 F.3d

1239 (11th Cir. 2007) ("§ 111(a) establishes these categories of forcible assault, each with its

own penalty"); *United States v. Green*, 543 Fed. Appx. 266, 272 (3d Cir. 2013) (unpublished) (§

111(a) requires proof of "conduct that presents a serious potential risk of physical injury to

another" and any conviction under § 111 is "a crime of violence"). See also discussion on elements of § 111(a), *infra*.

The defense, therefore asks this Court to use the following definition of forcibly: ***to act forcibly under § 111(a) requires the use of strength, power, or violence against an officer performing his official duties in a manner that is capable of causing the officer physical pain or injury***.

### D. <u>Defining "Corruptly" as Used in § 1512(c)(2)</u>

The government's proposed definition of *corruptly* renders the *mens rea* of wrongful as interchangeable with the *mens rea* required for *corruptly*. But the two are not the same — for if they were, there would be no need for Congress to use the term for special designation of certain offenses.

While the Supreme Court is clear that when an act is corrupt, it is necessarily wrongful, the inverse does not hold true. All acts that are corrupt are also wrongful, but all acts that are wrongful are not necessarily corrupt. That is because corrupt acts are but a smaller subset of wrongful acts — these are not equal or interchangeable types of *mens rea*. Corruptly has a narrower definition than just wrongful.

The definition of the term corruptly as is used in 18 U.S.C. § 1512(c)(2), Count Two, is currently on appeal at the D.C. Circuit. *See United States v. Robertson,* Case No. 22-3062 (D.C. Cir.).[5]

---

[5] The appeal in *Robertson* was filed on Aug. 8, 2022 and oral argument was held on May 11, 2023 before Judges Henderson, Pillard and Pan. An opinion has not yet been issued.

Until an opinion is issued in the *Robertson* case, the main guidance that this court has from the D.C. Circuit on the definition of "corruptly" is from the set of opinions in *Fischer*. *See United States v. Fischer*, 64 F.4th 329 (D.C. Cir. 2023).

In *United States v. Fischer*, a three-judge panel of the D.C. Circuit Court of Appeals issued a fractured, fragmented set of opinions on the sufficiency of an indictment charging 18 U.S.C. § 1512(c)(2). Each of the opinions discussed the complexity of the *mens rea* term *corruptly.*

Judge Pan's opinion stated that "the sufficiency of the indictments in this case does not turn on the precise definition of 'corruptly.'" *Fischer,* 64 F.4th at 340. Nonetheless, Judge Pan opined on the scope of what *corruptly* may or may not encompass:

> … a narrow construction of "corruptly" would indeed limit the *actus reus* of a § 1512(c)(2) violation. The requirement of "corrupt" intent prevents subsection (c)(2) from sweeping up a great deal of conduct that has nothing to do with obstruction — for instance, lobbyists who know they advocate for morally wrongful causes… Notably, the other crimes enumerated in § 1512 — such as killing, threatening, or dissuading witnesses — are classic examples of obstruction of justice… Subsection (c)(2) best fits with those crimes if "corruptly" constrains its scope.

> … assaulting law enforcement officers in an effort to prevent Congress from certifying election results was "wrongful" and "corrupt" under the law.

*Id*. at 339.

Judge Walker joined Judge Pan in judgment, and concurred in part, but explained that in order to concur with Judge Pan, his definition of "corruptly" would have to control, citing *Marks v. United States. See Fischer,* 64 F. 4th at 351-52, 352 (n.1), 362 (n.10) (Walker, J., concurring in part and concurring in judgment). Judge Walker defined *corruptly* as requiring proof of "an intent to procure an unlawful benefit." *Id.* at 352.

Thus, "corruptly" in § 1512(c) means to act "with an intent to procure an unlawful benefit either for [oneself] or for some other person." *Marinello v. United States*, 138 S. Ct. 1101, 1114 (2018) (Thomas, J., dissenting) (cleaned up). It "requires proof that the defendant not only knew he was obtaining an 'unlawful benefit' but that his 'objective' or 'purpose' was to obtain that unlawful benefit." *Id.* And that benefit may be unlawful either because the benefit itself is not allowed by law, or because it was obtained by unlawful means. *Id.*

*Id.*

But Judge Walker's definition of *corruptly* appears to have *only* been used in tax law. *See*

*United States v. Fischer*, 64 F.4th 329, 381 (D.C. Cir. 2023) (Katsas, J., dissenting). Furthermore,

this "knowledge of unlawfulness" standard is inconsistent with prior definitions of what it means

to act *corruptly*. *Id*.

[Judge Walker's opinion] imagines a protestor unaware that federal law prohibits picketing outside the home of a judge to influence his or her votes. 18 U.S.C. § 1507. But even that hypothetical protestor would be protected only until the jurist, a neighbor, or the police told the protestor what the law is. After that, the concurrence's position would expose the protestor not only to the one-year sentence set forth in section 1507, but also to the twenty-year sentence set forth in section 1512(c).

*Id*.

Judge Katsas observes that in practice, the definition of *corruptly* requires "that the

defendant seek an unlawful financial, professional, or exculpatory advantage." *Fischer*, 64 F.4th

at 380 (Katsas, J., dissenting) ("*See, e.g., Marinello,* 138 S. Ct. at 1105 (avoiding taxes); *Aguilar*,

515 U.S. at 595, 115 S.Ct. 2357 (disclosing wiretap); *North*, 910 F.2d at 851 (fabricating false

testimony and destroying documents)."). Judge Katsas distinguishes the January 6 cases from

historic cases where people were found to have acted *corruptly* because the Capitol breach cases

are not about people acting dishonestly or attempting to obtain some financial advantage, they

instead involve "the much more diffuse, intangible benefit of having a preferred candidate

remain President." *Id*. at 381. Judge Katsas points out that if proof of an intangible benefit is

deemed "good enough" by the courts to sustain the element of *corruptly*, "then anyone acting to achieve a specific purpose would satisfy this requirement, for the purpose of the action would qualify as the benefit." *Id*. "For example, the hypothetical firearms lobbyist would be covered if he sought a 'benefit' of less stringent gun regulations. Likewise, the hypothetical Senate protestor would do so if she sought a 'benefit' of defeating the bill under review. And so on." *Id*.

While Judges Pan and Katsas discuss the narrowness of the term *corruptly*, they fail to pinpoint its meaning. And, Judge Walker, while defining the term *corruptly*, appears to do so imperfectly — Judge Katsas' criticisms of Judge Walker's definition of *corruptly* are fair and concerning.

Resultingly, this trial court is left without clear instruction on the definition of *corruptly* from the Court of Appeals. Three appellate judges wrote three contradictory opinions on the meaning and application of the term. Of course, it does not mean that a fair definition cannot be deduced from what the judges of the higher courts have ruled out. The defense, therefore, proposes a definition of the term *corruptly* that protects the defendant from an unreasonably expansive definition, as proposed by the Government, and that takes into account the concerns outlined by the three appellate judges in *Fischer: **to act corruptly is to act to obstruct justice with the specific intent of procuring an unlawful financial, professional, or exculpatory advantage or benefit***.

The defendant's proposed definition of *corruptly* takes into account (1) Judge Pan's words about using the *mens rea* element to limit the *actus reus* to acts that are obstructive of justice, (2) Judge Katsas' observations about *corruptly* being limited to intent to gain an unlawful

financial, professional, or exculpatory advantage, and, (3) Judge Walker's definition that calls for

a specific intent to obtain an unlawful benefit.

For comparison, the term *wrongful* is defined as the opposite of innocent. *See Rehaif v.*

*United States*, 139 S. Ct. 2191, 2196-97 (2019) (using the term wrongful to mean the opposite of

innocent); *United States v. Feola,* 420 U.S. 671, 691 (1975) (using the term wrongful to mean

unlawful); see also *Wrongfully*, Black's Law Dictionary (4th ed. 1968) (defining a wrongfully as

unjust or immoral). In contrast, Black's Law Dictionary defines the word *corruptly* as generally

meaning "a wrongful design to acquire some pecuniary gain or other advantage." *Corruptly,*

Black's Law Dictionary (4th ed. 1968). Although given the chance to throw us a bone, in *Arthur*

*Andersen LLP v. United States*, the Supreme Court failed to define the term *corruptly*, saying that

the "outer limits of this element" will not be explored in the opinion of the Court, but, noting

that, at a minimum, the word corruptly" is "normally associated with" (as opposed to defined as)

"wrongful, immoral, depraved, or evil." 544 U.S. 696, 705-6 (2005).



As stated initially and as proved by the definitions discussed— while a corrupt act is always wrongful, a wrongful act is not always corrupt. The defendant's proposed definition of *corruptly* appropriately constrains the fact-finder to the distinction between the two terms.

### E.  Defining "Otherwise" as Used in § 1512(c)(2)

The definition of the term *otherwise* as is used in 18 U.S.C. § 1512(c)(2), Count Two, is currently on appeal at the United States Supreme Court. *See United States v. Edward Jacob Lang*, 64 F.4th 329 (D.C. Cir. 2023), *petition for cert. filed*, (U.S. Jul. 7, 2023)(No. 23-32); *United States v. Garret Miller*, 64 F.4th 329 (D.C. Cir. 2023), *petition for cert. filed*, (U.S. Aug. 1, 2023)(No. 23-94). The Defendant has filed an Amicus Brief in these cases, asking for the Supreme Court to clarify the breadth of § 1512(c)(2). *See* ECF No. 60.

The defendant defines *otherwise* as stringing together the first part of 18 U.S.C. § 1512(c) with the second, connecting § 1512(c)(1) with § 1512(c)(2), while the Government's definition of otherwise creates a lone-standing catch-all in § 1512(c)(2).

The distinction between the defendant's definition and that of the Government is critical in this case — it is the distinction between § 1512(c)(2) requiring an *actus reus* that limits the offense to one involving documents, records, objects, or the integrity or availability of evidence, *or* an *actus reus* that is unlimited. Since this defendant's case does not involve documents, records, objects, or the integrity or availability of evidence, the distinction is a critical one.

As argued by the defendant in his Motion to Dismiss, Notice of Supplemental Authority, and the Amicus Brief to the Supreme Court, arguments incorporated by reference herein, the

legally appropriate definition of *otherwise* should be the one proposed by the defense. *See* ECF

No. 60-1, ECF No. 37, ECF No. 54.

### F.  Defining "Otherwise Restricted" as Used in § 1752

Counts Four, Five, and Six require a finding that Defendant committed a prohibited act in

an area that was "posted, cordoned off, or otherwise restricted." *See* 18 U.S.C. § 1752(c)(1).

The use of the term "otherwise restricted" in 18 U.S.C. § 1752(c)(1) means restricted in a

similar manner to the preceding restrictions. See *Begay v. United States,* 553 U.S. 137, 140-43

(2008); *United States v. Fischer*, 64 F.4th 329, 345  (D.C. Cir. 2023) (when a statute "includes a

list of examples followed by 'otherwise' in a single, unbroken sentence within the same

subparagraph… the position of 'otherwise' [] inherently relates the word to the list immediately

before it"); *United States v. Williams*, 553 U.S. 285, 294 (2008) ("a word is given more precise

content by the neighboring words with which it is associated"). The terms in 18 U.S.C. § 1752(c)

(1) before the phrase "otherwise restricted" are the terms "posted" and "cordoned off" — which

are *types of visible or physical restrictions that objectively delineate or designate defined

boundaries or a defined perimeter as restricted*.[6] Therefore, the statute's plain text requires a

similar type of visible or physical restriction.

The defendant, therefore, requests an instruction for all counts charged under 18 U.S.C. §

1752 that requires the evidence of restriction to constitute a posting, a cordoning off, or

---

[6] At the time of enactment, neither term "posted" nor "cordoned" appeared in Black's Law Dictionary (4th ed. 1968). Accordingly, a standard dictionary must be used to define the terms. At the time of § 1752's enactment, "posted" meant to "forbid [property] to trespassers under penalty of legal prosecution by notices placed around the boundaries." Webster's Third New International Dictionary 1771 (1966). "Cordon" referred to "a line or circle of persons or objects around any person or place," while "cordon off" meant to "form a protective or restrictive cordon around [a designated area]." *Id.* at 506.

something inherently similar to posting or cordoning off— something that physically and objectively defines a perimeter or its boundaries as restricted.

### G.   Defining Obstruct, Impede, and Interfere for Section 231(a)(3)

Count One, charged under Section 231(a)(3), requires the Government to prove that the conduct of the defendant served as an actual hindrance or impediment to an officer performing his duties incident to the January 6 civil disorder.

The verbs "obstruct" and "impede" mean to "hinder a particular person or thing." *See Marinello v. United States*, 138 S. Ct. 1101, 1106 (2018). To "interfere," in this context, means "to interpose in a way that hinders or impedes," or "to come into collision or be in opposition." *Mirriam-Webster Dictionary* (1 Jul 2023) (available at https://www.merriam-webster.com/dictionary/interfere).

To prove an offense under Section 231(a)(3), the Government must show that the conduct of the defendant hindered or impeded an officer performing his duties incident to the January 6 civil disorder.

## II.   CONTESTED ELEMENTS OF EACH OFFENSE

### A.   18 U.S.C. § 1752 Requires Proof That Defendant Knew That the Vice President Is or Will Be Temporarily Visiting

Counts Four, Five, and Six are charged under 18 U.S.C. § 1752. Offenses under 18 U.S.C. § 1752 require proof beyond a reasonable doubt that the defendant acted *knowingly with respect to each element of the offense*. In a recent filing in the District Court for the District of

Columbia, Judge Lamberth ruled that the mens rea element of *knowingly* applies not just to knowledge that an area was restricted but also to the knowledge that the person protected by the Secret Service is or will be temporarily visiting that restricted area.

> [T]o prove that defendants "knowingly" committed the relevant acts in a "restricted building or grounds" for purposes of [counts under 18 U.S.C. § 1752], the government must prove not only that the defendants knew they were in a "posted, cordoned off, or otherwise restricted area," but also that they knew that it was such an area "of a building or grounds where the President or other person protected by the Secret Service is or will be temporarily visiting." 18 U.S.C. § 1752(c)(l)(B).

*United States v. Bingert*, et. al., Case No. 1:21-cr-00091-RCL, ECF No. 163 (D.D.C. May 18, 2023).

In *Bingert*, Judge Lamberth applied the natural reading of the statute. Judge Lamberth made it clear that the government cannot choose to separate out one portion of the "restricted building or grounds" definition from the rest of the words that follow; the Government cannot choose to prove only a select portion of the "restricted building or grounds" definition — it must prove it all. "[T]o prove that defendants 'knowingly' committed the relevant acts in a 'restricted building or grounds' for purposes of [counts under 18 U.S.C. § 1752], the government must prove not only that the defendants knew they were in a 'posted, cordoned off, or otherwise restricted area,' but also that they knew that it was such an area 'of a building or grounds where the President or other person protected by the Secret Service is or will be temporarily visiting.'" *United States v. Bingert*, et. al., Case No. 1:21-cr-00091-RCL, ECF No. 163 (D.D.C. May 18, 2023). Judge Lamberth isn't doing anything revolutionary, he is simply implying that we cannot stop reading the definition of "restricted building or grounds" at the word "area" because there is no period there; that sentence goes on to say, without any punctuation or separation, "of a

building or grounds where the President or other person protected by the Secret Service is or will be temporarily visiting."

There is no legal basis or precedent that allows the Government to choose to prove only a portion of a statutory definition to make a conviction easier at trial; the definitions are all-encompassing. The term "restricted building or grounds" must be defined in the bench instructions in its entirety. The definition written by Congress is but one inseparable concept — a restricted area where a person protected by the Secret Service is or will be temporarily visiting. Mr. Warnagiris is asking for the Government to be held to the full burden of proof.

The defense requests legal instructions for Counts Four, Five, and Six that are consistent with the principle outlined by Judge Lamberth, that the Government prove both, that 1) the defendant knew the area he entered was posted, cordoned off, or otherwise restricted, and 2) the defendant knew this was an area where the Vice President was or would be temporarily visiting.

### B.  Specific Intent Required To Prove Count One

Count One charges the defendant under 18 U.S.C. § 231(a)(3). While an intent element is not expressly spelled out in § 231(a)(3), an intent element is nonetheless implied by the courts.

"It is true that Section 231 (a) (3) does not specifically refer to intent, but it only applies to a person who `commits or attempts to commit any act to obstruct, impede, or interfere' with firemen or law enforcement officers. Under such phraseology, it will not be presumed that Congress intended strict liability for inadvertent or accidental occurrences where, as here, the crime is grounded on the common law." *Viet Nam v. Foran*, 411 F.2d 934, 937 (7th Cir. 1969); *United States v. Mechanic*, 454 F.2d 849, 854 (8th Cir. 1971) (§ 231(a) (3) must be construed to

require intent). The government must prove "specific intent." *United States v. Casper*, 541 F.2d

1275, 1276  (8th Cir. 1976). The level of intent applied has been "willfully and knowingly."

*United States v. McArthur*, 419 F.Supp. 186 (D.N.D. 1975).

 Judge Bates of the United States District Court for the District of Columbia agrees that §

231(a)(3) is not a strict liability offense but is instead a specific intent statute. "§ 231(a)(3) is a

specific intent statute, criminalizing only acts performed with the intent to obstruct, impede, or

interfere with a law enforcement officer." *United States v. McHugh*, 583 F. Supp. 3d 1, 25 (D.C.

2022). As does the Government, which stated in its brief in *McHugh* — "[t]he civil disorder

statute punishes only concrete, intentional acts that are performed with the specific purpose to

obstruct, impede, or interfere with firefighters or law enforcement." *Id.*

> The text of § 231 itself points to a requirement of obstructive intent. The provision
> prohibits only "act[s] to obstruct, impede, or interfere"—the best and most natural
> interpretation of the word "to" in that phrase is as an indication of purpose: "acts
> [performed in order] to obstruct." Although it is conceivable that "to" could refer not to
> the actor's purpose but to the ultimate result of the conduct (e.g., "commit an act
> accomplishing obstruction"), such a reading would be unnatural at best. Furthermore, if
> Congress wished only to specify the result of the act, it had many better options for doing
> so, including by omitting "to" altogether: it simply could have said "whoever obstructs,
> impedes or interferes." Courts must strive to give effect to every word in a statute no
> matter how short—in § 231(a)(3), that effort results in the conclusion that the statute
> includes a scienter requirement.

*Id. See also United States v. Fischer*, Criminal Action No. 1: 21-cr-00234 (CJN) (D.C. Mar. 15,

2022)(citing *McHugh*).

 Additionally, some courts have interpreted § 231(a)(3) as requiring more than an act —

requiring the Government to prove a *violent physical* act. The Eighth Circuit has ruled that §

231(a)(3) "applies only to violent physical acts." *United States v. Mechanic*, 454 F.2d 849, 852

(8th Cir. 1971); *United States v. Casper*, 541 F.2d 1275, 1276 (8th Cir. 1976); *United States v.*

*Banks*, 368 F. Supp. 1245 (D.S.D. 1973); *United States v. Rupert*, No. 20-CR-104 (D. Minn. Mar. 12, 2021). Some District Court judges have disagreed. *See United States v. Mostofsky*, 579 F. Supp. 3d 9, 24 (D.C. 2021); *United States v. McHugh*, 583 F. Supp. 3d 1, 29 (D.C. 2022) (accord); *United States v. Wood*, Criminal Action No. 20-56 MN (D. Del. July 20, 2021).

Accordingly, the defendant is seeking legal instructions that comply with these definitions.

### C.  <u>Proof of Assault Required for Any Conviction Under 18 U.S.C. § 111(a)</u>

Section 111(a) outlines <u>only three ways</u> in which the law can be violated:

1. "where the acts in violation of this section constitute *only simple assault*"
2. "where *such acts* [the acts in violation of this section that constitute an *assault*] involve physical contact with the victim *of that assault*"
3. "where *such acts* [the acts in violation of this section that constitute an *assault*] involve … the intent to commit another felony"

As the code section is written today, any conviction under Section 111(a) requires proof, at a minimum, of an *actus reus* of assault. *See United States v. v. Rivera-Alonzo*, 584 F.3d 829 (9th Cir. 2009) (finding that assault is required for any conviction under § 111(a) and that simple assault is a lesser-included offense of any felony under § 111); *United States v. Wolfname*, 835 F.3d 1214 (10th Cir. 2016) ("a § 111(a)(1) conviction for resisting, opposing, impeding, intimidating, or interfering … necessarily involves — at a minimum — simple assault"); *United States v. Martinez*, 486 F.3d 1239 (11th Cir. 2007) ("§ 111(a) establishes these categories of forcible assault, each with its own penalty"). The Defendant made extensive arguments on this issue and incorporates those arguments by reference herein. *See* ECF No. 43, 45, 48, and 52.

To summarize the argument, Defendant brings the Court's attention to the adverb *forcibly*. *Forcibly*, added in the first sentence of § 111(a) before the first of the string of verbs, with the disjunctive conjunction used only between the last two of them, "shows quite plainly that the adverb is to be interpreted as modifying them all." *Long v. United States,* 199 F.2d 717, 718-20 (4th Cir.1952). See also *United States v. Heid*, 904 F.2d 69, 71 (D.C. Cir. 1990); *United States v. Arrington*, 309 F.3d 40 (D.C. Cir. 2002) ("the adverb 'forcibly' in the first element of the offense modifies each of the prohibited acts specified in the second element: that is, a defendant does not violate the statute unless he forcibly assaults or forcibly resists or forcibly opposes, etc."). As discussed *supra* (see pages 6-7), *forcibly* means using strength, power, or violence in a manner that is capable of causing pain or injury. While resisting, opposing, impeding, intimidating, or interfering with an officer are not in themselves assaults and not violative of § 111(a), they are rendered assaultive acts, and thus criminal law violations, when performed *forcibly*. That is why the penalty clause of § 111(a) does not proscribe penalty to anything other than an assault — everything proscribed by this law is rendered a type of assault through the adverb *forcibly*. *See Johnson v. United States*, 130 S. Ct. 1265, 1271-72 (2010)(force means using strength, power, and violence against another person to a degree of power that is not satisfied by mere touching and is instead capable of causing physical pain or injury to another person); *United States v. Martinez*, 486 F.3d 1239 (11th Cir. 2007) ("§ 111(a) establishes these categories of forcible assault, each with its own penalty"); *United States v. v. Rivera-Alonzo*, 584 F.3d 829 (9th Cir. 2009) (finding that assault is required for any conviction under § 111(a) and that simple assault is a lesser-included offense of any felony under § 111); *United States v. Wolfname*, 835 F.3d 1214 (10th Cir. 2016) ("a § 111(a)(1) conviction for resisting, opposing,

impeding, intimidating, or interfering … necessarily involves — at a minimum — simple

assault"); *United States v. Green*, 543 Fed. Appx. 266, 272 (3d Cir. 2013) (unpublished) (§ 111(a)

requires proof of "conduct that presents a serious potential risk of physical injury to another" and

any conviction under § 111 is "a crime of violence").

The Defendant's argument in support of the assault-requirement reading of the statute is

supported by three Circuits, as cited above: the 9th Circuit, the 10th Circuit, and the 11th Circuit.

However, there is a three-way Circuit split on this issue.


A) <u>View 1: a Finding of Assault Is Not a Minimum Requirement for Conviction Under §</u>

<u>111(a)</u>

One group of Circuits has held that Section 111(a) does not require proof of assault as a

minimum for conviction under § 111(a). The Seventh Circuit outlined this view in *United States*

*v. Stands Alone*, explaining that "requiring assault as an essential element of every § 111 offense

would render the remaining five verbs superfluous." 11 F. 4th 532, 535 (7th Cir. 2021). The

Fourth, Fifth, and Sixth Circuits came to similar conclusions. *See United States v. Briley*, 770

F.3d 267, 274 (4th Cir. 2014) ("the misdemeanor provision is not limited to assault"); *United*

*States v. Williams*, 602 F.3d 313, 318 (5th Cir. 2010) ("a misdemeanor conviction under § 111(a)

(1) does not require underlying assaultive conduct"); *United States v. Gagnon*, 553 F.3d 1021,

1027 (6th Cir. 2009) (finding that simple assault is "a term of art that includes the forcible

performance of any of the six proscribed actions in § 111(a) *without* the intent to cause physical

contact or to commit a serious felony").

B) <u>View 2: a Finding of Assault Is Required for a Misdemeanor, but Not for a Felony</u>
<u>When There Is an Accompanying Intent To Commit Another Felony</u>.

Taking the middle ground, all on its own, is the Second Circuit— which has held that
while a *misdemeanor* conviction under 18 U.S.C. § 111(a) requires the finding of assault, "the
statute's five non-assault acts would appear to be criminally prohibited by the felony clause
'where such acts involve... the intent to commit another felony.'" *United States v. Davis*, 690
F.3d 127, 136-137 (2d Cir. 2012) (finding that "for a defendant to be guilty of the misdemeanor
of resisting arrest under Section 111(a), he necessarily must have committed common law simple
assault").

While the D.C. Circuit has not ruled on this issue, Judge Moss' opinion in *Cua* joins the
Second Circuit in this school of thought. *United States v. Cua*, Case 1:21-cr-00107-RDM, Dkt.
288 (D.D.C. February 22, 2023) (critiquing the findings of the Fourth, Fifth, and Sith Circuit and
finding that a misdemeanor conviction under § 111(a) requires proof of assault). Judge Nichols
agreed with Judge Cua and the Second Circuit on this interpretation of the law. See *United States
v. DaSilva,* 1:21-cr-00564-CJN, ECF No. 76 (July 13, 2023).

C) <u>View 3: Assault Is an Essential Element of Every § 111(a) Offense</u>

The Ninth, Tenth and Eleventh Circuits have found that assault is an essential element of
any conviction under § 111(a), misdemeanor and felony alike. *See United States v. Chapman*,
528 F.3d 1215 (9th Cir. 2008) ("convictions under this statute require at least some form of
assault"); *United States v. v. Rivera-Alonzo*, 584 F.3d 829 (9th Cir. 2009) (finding that assault is
required for any conviction under § 111(a) and that simple assault is a lesser-included offense of

any felony under § 111); *United States v. Wolfname*, 835 F.3d 1214, 1220 (10th Cir. 2016) (finding that a felony § 111(a) violation "requires proof of 'all other cases' assault, i.e., 'any assault that involves actual physical contact or the intent to commit [certain felonies] but does not involve a deadly or dangerous weapon or bodily injury,'" which requires the finding of an attempt or threat of physical injury); *United States v. Martinez*, 486 F.3d 1239 (11th Cir. 2007) (interpreting the 2002 version of this code section, the court found that "§ 111(a) establishes these categories of forcible assault, each with its own penalty").

The Third Circuit, in an unpublished opinion, agrees with this view as well by holding that any conviction under § 111 is "a crime of violence." *See United States v. Green*, 543 Fed. Appx. 266, 272 (3d Cir. 2013) (unpublished) (the court found that § 111(a) requires proof of "conduct that presents a serious potential risk of physical injury to another" and that any conviction under § 111 is "a crime of violence").[7] A crime of violence is defined under § 16 as having an element in the statute that requires proof of "the use, attempted use, or threatened use of physical force against [a] person or property." 18 U.S.C. § 16(a). "Physical force" has been defined by the Supreme Court to mean using strength, power, and violence in such a manner that is capable of causing physical pain or injury to another person. *Johnson v. United States*, 130 S. Ct. 1265, 1270-71 (2010). This definition of *physical force* is consistent with the use of "forcibly" in § 111(a) and with the penalty section of § 111(a) referring to all convictions under the code section as assaults.

The First Circuit appears to indicate it would agree with the Third, Ninth, Tenth, and Eleventh Circuits, though it has not issued an opinion directly on point. *See United States v.*

---

[7] Available at http://www2.ca3.uscourts.gov/opinarch/132056np.pdf

*Taylor*, 848 F.3d 476, 493, n.6 (1st Cir. 2017) ("Many courts have determined that an 'assault' is a necessary element of any § 111(a) conviction, meaning that even to prove a defendant forcibly intimidated an officer, for example, the prosecution must show an assault occurred.").

The D.C. Circuit has not yet opined on this issue. Nonetheless, in the most recent decision on § 111 out of the D.C. Circuit Court of Appeals, *United States v. Fischer*, the judges referred to 18 U.S.C. § 111(a)(1) as an assault crime. *See United States v. Fischer*, No. 22-3038, pp. 4,18,22 (D.C. Cir. Apr. 7, 2023) (referring to the indictment under § 111(a)(1) as a "felony assault count" and "assaulting law enforcement officers" or "assaulting police officers" on pages 4, 18, and 22 of Judge Pan's opinion; *see also* page 61 of Judge Walker's opinion using the language "assaulting police officers," and pages 65, 90, and 96 of Judge Katsas' opinion — using the same language).

The Defendant urges this Court to adopt the Third View, the view supported by the Third, Ninth, Tenth, and Eleventh Circuits.

### D.  **"Cause-In-Fact" Instruction for 18 U.S.C. § 1752(a)(2)**

Count Five is charged under 18 U.S.C. § 1752(a)(2). This section has a causational element that requires any disorderly or disruptive conduct of the defendant to "in fact impede[] or disrupt[] the orderly conduct of Government business or official functions." *See* 18 U.S.C. § 1752(a)(2). Accordingly, the defense is requesting a cause-in-fact instruction for Count Five.

The Government must prove that the Defendant's actions were the "but-for causation" or "an independently sufficient cause" that impeded or disrupted the orderly conduct of Government business or official functions. *See Burrage v. United States*, 134 S.Ct. 881 (2014).

In *Burrage*, the Supreme Court was interpreting the phrase "results from" in § 841(b), given its ordinary meaning, to require "but-for causation" —ie, that the death would not have occurred but for the defendant's drug-dealing. *Burrage*, 134 S.Ct. at 881. The court ruled that the "but-for requirement is a part of the common understanding of cause." *Id*. The Supreme Court ultimately held "that, at least where [the] use of the drug distributed by the defendant is not an independently sufficient cause of the victim's death or serious bodily injury, a defendant cannot be liable under the penalty enhancement provision of 21 USC § 841 (b)(1)(C) unless such use is a but-for cause of the death or injury." *Id.* at 892.

The Supreme Court noted that but-for causation is reflected in the Model Penal Code's "traditional understanding" of a causal relationship: that "[c]onduct is the cause of a result [when] it is an antecedent but for which the result in question would not have occurred." *Burrage*, 134 S.Ct. 881. This formulation, the Court noted, represents "the minimum requirement for a finding of causation when a crime is defined in terms of conduct causing a particular result." *Id*.

In 18 U.S.C. § 1752(a)(2), Congress similarly calls for proof that a defendant's conduct "in fact" impedes or disrupts, which, given its ordinary meaning under the *Burrage* analysis, requires but-for causation. Accordingly, the defense asks for instructions that require the Government to prove that the Defendant's actions were a but-for cause, or an independently sufficient cause, that impeded or disrupted the orderly conduct of Government business or official functions.

### III. AIDING AND ABETTING

Aiding and abetting has been charged as a method by which the Defendant could have committed Count Two.

The Government's standard instructions on aiding and abetting are insufficient as a matter of law, and inconsistent with *Rosemond v. United States*, 134 S. Ct. 1240 (2014), *United States v. Gaviria*, 116 F.3d 1498, 1535 (D.C. Cir. 1997), and *United States v. Wilson*, 160 F.3d 732, 738 (D.C. Cir. 1998).

An aiding and abetting conviction requires proof of full, advance knowledge of a crime that a defendant participated in— which includes each of its elements— and that this crime was something that the defendant wished to bring about and sought by his actions and efforts to commit successfully, as opposed to just associating himself with a criminal venture in some way. *See Rosemond v. United States*, 134 S. Ct. 1240, 1248-50 (2014) (holding that the government must prove that an aider and abettor of criminal conduct participated with advance knowledge of the elements that constitute the charged offense); *United States v. Goldtooth*, 754 F.3d 763, 769 (9th Cir. 2014) (reversing defendants' convictions for aiding and abetting because there was no evidence that defendants had foreknowledge that the crime was going to occur); *United States v. Encarnación-Ruiz*, 787 F.3d 581 (1st Cir. 2015); *Steiner v. United States*, 940 F.3d 1282 (11th Cir. 2019). *See also United States v. Wilson*, 160 F.3d 732, 738 (D.C. Cir. 1998) (the government must show that a defendant intended to bring about the crime and that he knew why and what the principal intended to do to commit the crime).

The intent requirement is satisfied when a person actively participates in a criminal venture with full, "advance knowledge" of the circumstances constituting the charged offense.

*Rosemond*, 134 S. Ct. at 1248-50. This "advance knowledge" requirement is defined as knowledge that enables a defendant to make the relevant legal and moral choice, with time that allows for a realistic opportunity to walk away or to quit the crime. *Id.* at 1249. This is a *mens rea* element that also requires a showing that the accused intended to facilitate the exact offense's commission. *Id.* at 1248. Intent to advance some different or lesser offense is insufficient for a conviction; instead, the intent proven at trial must go to the specific and entire crime charged. *Id.*

"[W]hat jury instructions should convey, is that the defendant has chosen, with full knowledge, to participate in the illegal scheme." *Rosemond*, 134 S. Ct. at 1250. *See also United States v. Wilson*, 160 F.3d 732, 738 (D.C. Cir. 1998) (the government must show that a defendant intended to bring about the crime and that he knew why and what the principal intended to do to commit the crime).

Accordingly, the defense proposes the following legal instructions for Count Two, charging aiding and abetting of Section 1512(c)(2):

1) Another person committed the complete offense charged in Count Two;

2) The defendant possessed full, advance knowledge that the crime was intended to be committed by another person, including each of the elements that constitute that crime.

3) The defendant had the specific intent to facilitate the commission of this exact offense.

4) The defendant acted knowingly and willfully.

5) The defendant aided, abetted, counseled, commanded, induced, or procured the person who committed the offense.

6) The defendant's actions in furtherance of the crime took place before the crime was completed.

It is not enough that the defendant merely associates with the person committing the crime, or unknowingly or unintentionally did things that were helpful to that person, or was present at the scene of the crime. The evidence must show beyond a reasonable doubt that the defendant acted with the full, advance knowledge of the crime and the specific intention of helping that person commit the offense charged. *Rosemond v. United States*, 134 S. Ct. 1240 (2014).

"Advance knowledge" is defined as knowledge that enables a defendant to make the relevant legal and moral choice ahead of time, sometime before the commission of the offense, a time period that affords the defendant with a realistic opportunity to walk away or to quit the crime. *Rosemond v. United States*, 134 S. Ct. 1240 (2014).

"Specific intent" means that this crime was something that the defendant wished to bring about and sought by his actions and efforts to commit successfully, as opposed to just associating himself with a criminal venture in some way. *Rosemond v. United States*, 134 S. Ct. 1240 (2014); *United States v. Gaviria*, 116 F.3d 1498, 1535 (D.C. Cir. 1997); *United States v. Wilson*, 160 F.3d 732, 738 (D.C. Cir. 1998).

Accordingly, a defendant acts with the specific intent to facilitate the crime of the principal when the defendant actively participates in a criminal venture with advance knowledge of the crime, knowing each element of the offense, and having acquired knowledge of the crime before the commission of the offense, at a time when the defendant still had a realistic opportunity to withdraw from the crime and walk away.

To "aid" means to actively assist or to help the commission of a crime. To "abet"

means to encourage, advise, or instigate the commission of a crime. *See* 1 Charles E.

Torcia, *Whatron's Criminal Law* § 29, at 181 (15th ed. 1993).

Respectfully submitted,

By Counsel:

_____/s/_____
Marina Medvin, Esq.
*Counsel for Defendant*
MEDVIN LAW PLC
916 Prince Street
Alexandria, Virginia 22314
Tel:  888.886.4127
Email: contact@medvinlaw.com

**<u>CERTIFICATE OF SERVICE FOR CM/ECF</u>**

I hereby certify that on September 18, 2023, I will electronically file the foregoing with
the Clerk of the Court for the United States District Court for the District of Columbia by using
the CM/ECF system. I certify that all participants in the case are registered CM/ECF users, and
that service will be accomplished by the CM/ECF system.

_____/s/_____
Marina Medvin, Esq.