UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| v. : | Case No. 1:21-cr-382 (PLF) |
| : | |
| CHRISTOPHER WARNAGIRIS, : | |
| : | |
| Defendant. : | |

**GOVERNMENT'S RESPONSE TO THE COURT'S ORDER**

The United States, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this opposition to the defendant's motion for exculpatory evidence, ECF No. 62, and the related Order of the Court, ECF No. 91. To the extent the government seeks to respond to any of the Court's order *ex parte*, we will do so in a separate filing, consistent with the Court's order.

**I.     Legal Argument and Concerns**

The defendant's motion fundamentally misunderstands the government's obligations regarding voluminous discovery. The government does not have the burden to sort through voluminous discovery to identify any potential evidence that could be considered *Brady* material under any possible defense theory. *United States v. Chansley*, 21-cr-3 (RCL), 2023 WL 4637312 at *13 (D.D.C. Jul. 20, 2023) ("In other words, *Saffarinia* does not require the government to specifically identify to a defendant any evidence in the government's voluminous disclosures that could conceivably qualify as *Brady* material based on the government's anticipation of any possible defense theory."); *see also Arizona v. Youngblood*, 488 U.S. 51, 59 (1988) (noting that the government does not have a constitutional duty to perform any particular tests); *United States v. Nichols*, 21-cr-117 (RCL), 2023 WL 6809937 at *5 (D.D.C. Oct. 16, 2023) (mere speculation is not sufficient to establish a *Brady* claim).

In this case, the defendant identified a single, publicly-available video where the named victim-officer engaged with rioters in a way that the defendant contends is exculpatory. ECF No. 62 at 1-2. In the video, Officer A.W. is visible amongst a line of United States Capitol Police ("USCP") officers on the East Front of the U.S. Capitol.[1] The officers are standing in front of a large group of demonstrators and behind a bicycle rack barricade. After speaking to an individual with a megaphone (Individual 1), Officer A.W. speaks to the crowd and says, "Listen up folks. We can't do anything in chaos. We understand it's your house. We have a job to do as well. Everybody get under control. We'll push it up to our leadership, see what we can do about getting you to the stairs."[2] Individual 1 then uses the megaphone to tell the crowd that Officer A.W. was going to ask his superiors if the crowd could move to the steps of the U.S. Capitol "for the purpose that we don't want violence." Individual 1 continued, "we don't want harm, we don't want destruction, and we don't want you going to jail if you don't have to." The video splices in several other videos purportedly from the same time where the demonstrators continue to discuss the possibility of moving towards the steps of the Capitol Building. Then, without the context of the intervening time, the video jumps forward to show rioters standing before the Columbus Doors leading into the eastside of the Capitol. The video's editor identifies a police officer standing amongst the crowd as Officer A.W. The person capturing the video describes the officer as "very nice" and "incredibly calm." The officer tells the rioters, "I just wanna go that way," in the

---

[1] The video is available online at: https://rumble.com/v27algs-january-26-2023.html (last accessed November 30, 2023).

[2] The video's transcript as cited here is copied out to the best of the government's comprehension of the audio. As a result, the transcript here conflicts with some of the captions superimposed on the video by its editor.

direction of the Columbus Doors. The officer continues, "You can guys still push, I'm gonna go that way." The same individual laughs in response and says, "He just said we can still push. What a nice cop." Near the end of the video, while crushed from all sides by rioters and still outside the Capitol Building, one rioter extends his fist towards Officer A.W. for a "fist bump," which the officer appears to respond to or reciprocate. The Court should note that this video is not a single, continuous feed. Rather, it is spliced and condenses multiple videos from different locations and times in and around the Capitol Building on January 6, 2021.[3]

    At trial, the government anticipates that Officer A.W. will testify that his comments made to Individual 1 occurred shortly after an attempted violent breach at the bicycle rack barricade. During that incident, several rioters tried to use the bicycle racks as weapons to assault Officer A.W. and his fellow officers. Officer A.W.'s comments were thus an attempt to calm the rioters' fervor. The government also anticipates that Officer A.W. will testify that while outside of the Columbus Doors, he was outnumbered by the rioters who surrounded him on all sides. At the time, he continued to try to placate the rioters while he moved towards safety inside the Capitol Building. In other words, Officer A.W. was attempting to use whatever exhortations he could muster to keep the peace. But his words were not an invitation to commit crime, or continue to commit crimes.

    Based on this video alone, the defendant now seeks "a face-trace list" of this officer sourced from all publicly available media and BWC from January 6. ECF Nos. 62, 80. But the only proffer made by the defendant is a conclusory statement that the "face-trace list" would be "material,

---

[3] For example, the bulk of the video appears to be several clips taken at different areas – like the East Front of the Capitol or rioters standing just outside of the Columbus Doors (skipping the East Front being overrun by rioters). The video appears to collate several videos of Officer A.W.'s actions to support a single narrative.

favorable to the defense, and exculpatory in nature." ECF No. 62 at 2-3. "This is the sort of mere speculation that does not suffice for a *Brady* claim." *Nichols*, 2023 WL 6809937, at *8 (internal quotation omitted). The defendant is merely taking a "shot in the dark" that the list would contain material evidence. *Id.* Therefore, "[a]bsent any actual indication that the requested ['face-trace list'] would support the defendant's [argument]," . . . "the information is not material and not subject to disclosure." *Id.* at *9.

Here, the defendant's proffer lacks materiality, context, and most importantly, factual support. To start, at no point in the defendant's motion and reply does he articulate exactly how this video is *Brady* to *him*.[4] Even assuming *arguendo* that the underlying theory is that the officer somehow encouraged members of the already ongoing mass riot to continue to riot, none of that has a nexus to the defendant's interaction with said officer. In fact, nowhere does the defendant even proffer that he himself was encouraged, solicited, cajoled, entrapped, or otherwise forced to participate in a riot because of some proximate cause or association with this officer. Nor could he. This type of claim – that a single officer somehow authorized a person to commit a crime in the middle of a violent riot – is meritless,[5] particularly when the government has provided the tools

---

[4] If, for example, the defendant believed that this video supported an entrapment by estoppel defense, he needs to articulate that argument to properly assert a *Brady* claim. Nonetheless, after the defendant filed his numerous motions related to his demand for a "face-trace list" of Officer A.W., defense counsel reported to the Court that the entrapment by estoppel defense was "not applicable to this case." Motions Hrg. Tr., Oct. 16, 2023, 28:6-17.

[5] The defendant's claim barely acknowledges the law on entrapment by estoppel or public authority defenses. The defense of entrapment by estoppel only "applies to a defendant who reasonably relies on the assurance of a government official that specified conduct will not violate the law." *United States v. Alvarado*, 808 F.3d 474, 484–85 (11th Cir. 2015). Such reliance must be "objectively reasonable." *United States v. Barker*, 546 F.2d 940, 948 (D.C. Cir. 1976). Just like how a President cannot authorize an assault on the legislative branch, *see United States v. Chrestman*, 525 F. Supp. 3d 14, 32-33 (D.D.C. 2021), "statutory law applies with equal force to

necessary to search discovery databases for said information. *See, e.g.*, *United States v. William Pope*, 21-cr-128 (RC), ECF No. 103 at 8 ("At the outset, it bears repeating that Defendant has full access to possess all Sensitive materials and to view all Highly Sensitive material under supervision by standby counsel"); *United States v. Craig Bingert*, 21-cr-91 (RCL) (May 11, 2023 Minute Order denying ECF No. 149).

Fatal to the defendant's ultimate claim is that the material they claim is *Brady* is simply not exculpatory. There is no evidence that the interaction the defendant proffered occurred within the vicinity of the defendant. Without a factual nexus to the defendant, there is no basis to speculate that the material is actually favorable to the defendant in a way to undercut an element at trial. The defendant has not even attempted to articulate how the officer's conduct on that day – before, during, or after his later interaction with the defendant – impacted whether the defendant acted knowingly or willfully when he engaged in the charged conduct. While the government's duty to provide exculpatory information is clear, it nonetheless is worth contextualizing that the defendant knows where he went on the day he committed the crime, and yet has offered no evidence that this extraordinary task he now seeks will yield information that undercuts his liability.

But even if a defendant adequately proffers a factual basis for his *Brady* claim, the government must also singularly possess the targeted material. The purpose of *Brady* is to ensure that the government provides the defendant with exculpatory material in its exclusive control,

---

government actors in less powerful offices, such as law enforcement officers protecting the U.S. Capitol Building." *United States v. Williams*, 21-cr-377 (BAH), ECF No. 87 at *2 (D.D.C. Jun. 8, 2022). Even if the defendant could establish that a member of law enforcement told him that it was lawful to enter the Capitol building or allowed them to do so, the defendant's reliance on any such statement would not be reasonable in light of the "obvious police barricades, police lines, and police orders restricting entry at the Capitol." *Chrestman*, 525 F. Supp. 3d at 32.

which is also unknown to the defendant. *See United States v. Derr*, 990 F.2d 1330, 1335 (D.C. Cir. 1993) (citing *United States v. Agurs*, 427 U.S. 87, 103 (1976) ("*Brady* only requires disclosure of information unknown to the defendant."); *United States v. Flynn*, 411 F. Supp. 3d 15, 32 (D.D.C. 2019) ("*Brady* does not extend to information that is not within the government's possession[.]") (internal citation omitted); *see also United States v. Mota*, 685 F.3d 644, 648 (7th Cir. 2012) (concluding a *Brady* violation where the government failed to provide material in its exclusive control). However, when courts have addressed the issue of *Brady* in conjunction with publicly accessible records or materials otherwise available to the defendant, courts have generally held that "the government is not obliged under *Brady* to furnish a defendant with information which he already has or, with any reasonable diligence, he can obtain himself." *United States v. Campagnuolo*, 592 F.2d 852, 861 (5th Cir. 1979); *see also United States v. Cruz-Feliciano*, 786 F.3d 78, 87-88 (1st Cir. 2015); *Coe v. Bell*, 161 F.3d 320, 344 (6th Cir. 1998); *United States v. Payne*, 63 F.3d 1200, 1208 (2d Cir. 1995); *Jarrell v. Balkcom*, 735 F.2d 1242, 1258 (11th Cir. 1984); *but see Dennis v. Sec'y, Pennsylvania Dep't of Corr.*, 834 F.3d 263, 288-293 (3d Cir. 2016) (in dicta, concluding that there would be a *Brady* violation where the government failed to provide a copy of a receipt in its possession even if the receipt was publicly available). Thus, where materials otherwise exist in an accessible format to the defendant, those materials are not subject to *Brady*. *See United States v. Borda*, 941 F. Supp. 2d 16, 25 (D.D.C. 2013) ("[T]here cannot be a *Brady* violation for failure to disclose public documents which the Defendants could have found on their own."); *United States v. Blackley*, 986 F. Supp. 600, 603 (D.D.C. 1997) ("The policies requested by defense counsel are available to the public and something that can be readily obtained by others is, by definition, not 'suppressed'").

Here, the targeted materials identified by the defendant are in his words "publicly available," and therefore are accessible by him just as easily as the government. ECF No. 62 at 3. Accordingly, these materials fall outside the scope of *Brady*. *Derr*, 990 F.2d at 1335; *Flynn*, 411 F. Supp. 3d at 32. Nonetheless, the government has made significant efforts to make publicly-sourced videos provided to or recovered by the government available to the defense through global discovery. Indeed, scores of January 6 defendants have found materials within the government's discovery productions that the defendant now claims is simply impossible for him to obtain. *See, e.g.*, *United States v. William Pope*, 21-cr-128 (RC), ECF Nos. 72 at 22-24; 81 at 14; 82; 90 at 2; *United States v. Eric Christie*, 23-cr-5 (APM) (defense counsel identified radio recordings within global discovery that it contended was *Brady*); *United States v. Bradley Bennett*, 21-cr-31 (JEB) (defense counsel coordinated with Relativity representations and created a presentation for plea negotiation purposes); *United States v. Jonathan Munafo*, 21-cr-330 (JEB) (defense counsel reviewed global discovery for comparable defendants similarly-situated); *United States v. Elliot Resnick*, 23-mj-58 (same); *United States v. Leo Kelly*, 21-cr-718 (RCL) (defense counsel identified police materials claimed to support ongoing restricted perimeter litigation); *United States v. Kenneth Thomas*, 21-cr-552 (DLF), ECF No. 96 (defendant's preliminary exhibit list contained 426 items, including footage from MPD that was not provided in case-specific discovery, but was a part of global discovery); *United States v. Daniel Gray*, 21-cr-495 (ABJ) (defendant provided an analysis of evidence found by the defendant in global discovery).

The defendant's request is not simply rooted in seeking material or reviewing existing evidence. Rather, he wants the government to create a list of evidence that does not currently exist. But the government "do[es] not have a constitutional duty to perform any particular tests" or

7

investigation that may lead to exculpatory or impeachment material. *Youngblood*, 488 U.S. at 59. The application of this rule extends, but is not limited, to the recovery of fingerprints, *Brown v. United States*, 881 A.2d 586, 594 n.11 (D.C. 2005) (internal citation omitted), collection of DNA evidence, *Youngblood*, 488 U.S. at 58-59, and performance of comparative ballistics analysis, *Bellinger v. United States*, 127 A.3d 505, 520-521 (D.C. 2015). In such cases, courts will allow defendants to conduct their own investigation to locate the relevant evidence they seek. 18 U.S.C. § 3006A(e)(1); *United States v. Burroughs*, 613 F.3d 233, 239 (D.C. Cir. 2010) (discussing the defendant's burden to show necessity to receive funds for an investigator). Thus, where the defendant wants to collect and review evidence, the remedy is not to have the government do that task for him. Rather, the defendant has the burden to do so himself, even if doing so is expensive or time-consuming.

This legal concept is neither new nor novel. *See, e.g.*, *United States v. Alverio-Melendez*, 640 F.3d 412, 424 (1st Cir. 2011) ("The failure to create exculpatory evidence does not constitute a *Brady* violation."); *United States v. Gray*, 648 F.3d 562, 567 (7th Cir. 2011) ("That's why Gray is reduced to arguing that *in advance of trial* the government should have directed EDS to create and run programs to extract data from its database that would be useful to the defense. That argument is a non-starter. . . . It implies that the state has a duty not merely to disclose but also to create truthful exculpatory evidence. The failure to create exculpatory evidence does not constitute a *Brady* violation.") (emphasis in original and citations omitted); *United States v. Graham*, 484 F.3d 413, 417 (6th Cir. 2007) ("*Brady* clearly does not impose an affirmative duty upon the government to take action to discover information which it does not possess."); *United States v. Edwards*, 442 F.3d 258, 266 (5th Cir. 2006) ("The prosecution has no duty to turn over to the

defense evidence that does not exist.") (editorial marks omitted); *United States v. Monroe*, 943 F.2d 1007, 1011 n.2 (9th Cir. 1991) ("*Brady* does not require the government to create exculpatory evidence that does not exist."); *United States v. Sukumolachan*, 610 F.2d 685, 687 (9th Cir. 1980) ("*Brady* [] does not require the government to create exculpatory material that does not exist."); *Werth v. United States*, 493 F. App'x 361, 366 (4th Cir. 2012) ("While the government is obligated to disclose favorable evidence in its possession, it is not required to create evidence that might be helpful to the defense."); *United States v. Nguyen*, 98 F. App'x 608, 609 (9th Cir. 2004) ("*Brady* does not require the government to interview witnesses or otherwise create exculpatory evidence not then in existence.").

In *United States v. Brock*, the court dealt with a similar motion for discovery in a case related to the January 6 riot at the U.S. Capitol. 628 F. Supp. 3d 85 (D.D.C. 2022) (Bates, J.). In Brock's motion, he identified an unknown individual in a video and demanded that the government identify him. *Id.* at 100. In denying Brock's motion, Judge Bates noted that although the government's response suggested the relevant individual was a law enforcement officer, neither party asserted that the individual's identity was known to the government. *Id.* The government conceivably could have conducted further investigation to confirm that individual's identity, including within its own holdings. Nonetheless, Judge Bates properly concluded that "there is no outstanding information [the defendant] requests from this video that the prosecution has an obligation to provide under *Brady* or Rule 16." *Id.* The same is true here. Judge Bates' decision comports with courts' reluctance to "require[e] the government to, in effect, do defense counsel's work for them and of inserting itself into the fray of micromanaging discovery . . . ." *United States v. Sheppard*, 2022 WL 17978837, 21-cr-203 (JDB), at *14 (D.D.C. Dec. 28, 2022).

9

Here, the defendant asks the Court to take the unprecedented step of ordering the government to seek out and review material that the defendant may otherwise access, or in the alternative (according to him) task a private person or group of persons to do the defendant's job for him. ECF No. 62 at 2.

Contrary to the defendant's unsupported claims, there are several facial recognition programs commercially available to the public. One such program is Amazon's Rekognition, which allows users to upload media files or reference URLs containing media and run facial recognition against the individuals depicted in the media. *Available at:* https://aws.amazon.com/rekognition/ (last accessed November 30, 2023). While the defendant may find it more convenient or cheaper to review a list of media distilled by the government, "*Brady* does not require the government to facilitate the compilation of exculpatory material that, with some industry, [the defendant] could marshal on their own." *United States v. Runyan*, 290 F.3d 223, 246 (5th Cir. 2002) (internal citation and quotation omitted).

## **CONCLUSION**

For the reasons stated above, the government respectfully requests that the Court deny the defendant's motion.

        Respectfully submitted,

        MATTHEW M. GRAVES
        UNITED STATES ATTORNEY
        D.C. Bar Number 481052

By:   */s/ ANDREW HAAG*
       Andrew Haag
       Assistant United States Attorney
       MA Bar No. 705425
       601 D Street NW, Washington, D.C. 20530
       Tel. No.: (202) 252-7755
       Email: andrew.haag@usdoj.gov

       */s/ REBEKAH LEDERER*
       Rebekah Lederer
       Assistant United States Attorney
       Pennsylvania Bar No. 320922
       601 D St. N.W, Washington, D.C. 20530
       Tel. No.: (202) 252-7012
       Email: rebekah.lederer@usdoj.gov