## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA** ) | |
| ) | |
| **v.** ) | CASE NO: 1:21-CR-00382-PLF |
| ) | |
| **CHRISTOPHER WARNAGIRIS**, ) | STATUS: PENDING VERDICT |
| ) | |
| DEFENDANT. ) | |

### DEFENDANT'S REPLY TO GOVERNMENT'S OPPOSITION

### I.  Defendant Has Moved To Strike the Government's Wildly Inaccurate "Brief Factual Recitation" As Unethical and Highly Prejudicial Prosecutorial Gamesmanship

The Defendant hereby incorporates by reference ECF No. 157, Defendant's Motion to Strike Portions of ECF No. 156.

### II.  Motion to Dismiss Count Two of the Indictment Should be Granted

Count Two charges Section 1512(c)(2) without describing the conduct of the defendant that allegedly infringes on subsection (c)(1) of § 1512. The indicted Count is insufficient as a matter of law under *Fischer. See Fischer v. United States*, 144 S. Ct. 2176, 2189 (2024); *see also* GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS COUNT I OF THE SUPERSEDING INDICTMENT ALLEGING VIOLATION OF 18 U.S.C. § 1512(C)(2), *United States v. Baez,* Case No. 1:21-cr-00507-PLF, ECF No. 106 at *4 (D.D.C. Sep. 23, 2024). It is impossible to determine from the four corners of Mr. Warnagiris' indictment whether the Government is accusing the

defendant of conduct that falls under the scope of prohibitions of Section 1512(c)(2) as read together with subsection (c)(1), or whether the conduct falls outside of it.

Unlike situations where parroting the wording of the statute has been deemed sufficient, the *Fischer* decision makes it clear that the Government's conceptualization of prohibitions outlined in Section 1512(c)(2) is overly broad by scooping in conduct not prohibited by this code and omissive of Section 1512(c)(1) requirements. *See Fischer,* 144 S.Ct. at 2189 (the Government's theory can "criminalize a broad swath of prosaic conduct, exposing activists and lobbyists alike to decades in prison… a peaceful protester could conceivably be charged under §1512(c)(2) and face a 20-year sentence"). Accordingly, **in the case of a Section 1512(c)(2) charge, the indictment must be more particularized than just the recitation of the code** in order to properly put the defendant on notice of what he is defending against. *See Hamling v. United States*, 418 U.S. 87, 117 (1974); *United States v. Cruikshank*, 92 U.S. 542, 559 (1875) ("[T]he indictment should state the particulars, to inform the court as well as the accused. It must be made to appear — that is to say, appear from the indictment, without going further — that the acts charged will, if proved, support a conviction for the offence alleged."). **"Where guilt depends so crucially upon such a specific identification of fact, our cases have uniformly held that an indictment must do more than simply repeat the language of the criminal statute."** *Russell v. United States*, 369 U.S. 749, 764 (1962); see also *United States v. Thomas*, 444 F.2d 919, 922 (D.C. Cir. 1971) (noting that an indictment needs to "achieve the requisite degree of precision" and holding that an indictment is insufficient as a matter of law when "it describes the offense only in impermissibly broad and categorical terms"). Fed. R. Crim. P. 7(c), for these very reasons, states that an indictment "must be a plain, concise, and definite written

statement of the *essential facts constituting the offense charged*." (Emphasis added.) Factual

specificity is an indispensable component of a Section 1512(c) indictment after *Fischer* because

the reasoning in *Fischer* places tighter constraints on the Government — tighter factual

constraints on the Government, to be exact — and logical deduction extends that burden to

indictment specificity.

Indeed, the Government agrees that *Fischer* requires a higher burden for the indictment.

*See* GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS COUNT I OF THE

SUPERSEDING INDICTMENT ALLEGING VIOLATION OF 18 U.S.C. § 1512(C)(2), United States v.

*Baez,* Criminal Case No. 1:21-cr-00507-PLF, ECF No. 106 at *4 (D.D.C. Sep. 23, 2024) ("The

additional charging language serves to expand the indictment to include both subsections of §

---

**III.   If the Court Considers the Defendant's Motion to Dismiss, the Motion Should be Denied Because the Indictment Adequately States an Offense.**

If the Court decides to bear the defendant's motion to dismiss, the Court should still deny the motion on the merits. This Court already thoroughly explained the standard of review for motions to dismiss in its order denying the defendant's previous motion on similar grounds. *See* ECF No. 87 at 5-6. The defendant now argues the indictment is deficient because it fails to reference "records, documents, objects, or . . . other things used in" the official proceeding. ECF No. 152 at 1 (citing *Fischer*, 144 S.Ct. at 2190). However, the second superseding indictment alleges that the defendant committed the offense using the exact same linguistic structure as the relevant statute, which provides notice of the exact crime for which the defendant is charged. ECF No. 49 at 2 (alleging that the defendant "attempted to, and did, corruptly obstruct, influence, and impede an official proceeding[.], *compare* 18 U.S.C. § 1512(c)(2) ("Whoever corruptly . . .

those grounds either.

10

obstructs, influences, or impedes any official proceeding[.]"). Indeed, the Court already rejected this same argument for the same reason when it denied the defendant's first motion to dismiss. ECF No. 87 at 11-13. Further, the Supreme Court in *Fischer* did not step into the shoes of Congress and modify the statutory language of the offense as the defendant seems to suggest. Rather, the Court only clarified the way one must obstruct, influence, or impede an official proceeding to be liable under Section 1512(c)(2). Therefore, the second superseding indictment adequately states an offense and the defendant's motion to dismiss should be denied.

---

Order (Aug. 2, 2024), and also appointed the Federal Public Defender "as amicus curiae to assist the defendant with making arguments as to the impact of [*Fischer*] on Count One," Minute Order (Aug. 5, 2024).

At the August 28 hearing, the government announced its intent to proceed to trial on Count One. The Court set a briefing schedule and scheduled a bench trial for December 3, 2024. *See* Minute Order (Aug. 28, 2024).

On September 18, 2024, the government filed a Third Superseding Indictment charging the Defendant with violation of 18 U.S.C. § 1512(c). ECF No. 103. The charging language of the Third Superseding Indictment tracks the language of the statute, *i.e.*:

On or about January 6, 2021, within the District of Columbia and elsewhere, **STEPHANIE MARYLOU BAEZ** attempted to, and did, corruptly *alter, destroy, mutilate, and conceal a record, document, and other object, with the intent to impair the object's integrity or availability for use in an official proceeding, and otherwise* obstruct, influence, and impede an official proceeding, that is, a proceeding before Congress, specifically, Congress's certification of the Electoral College vote as set out in the Twelfth Amendment of the Constitution of the United States and 3 U.S.C. §§ 15-18.

ECF No. 103 at 2 (emphasis added to identify language that has been added to the Third Superseding Indictment).[2] The additional charging language serves to expand the indictment to include both subsections of § 1512(c) based on the Supreme Court's guidance that subsection (c)(2) should be read "in light of the context of subsection (c)(1)." *Fischer*, 144 S. Ct. at 2189.

**II.      LEGAL STANDARD**

An indictment is sufficient if it "contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend." *Hamling v. United States,*

[2] Because the Third Superseding Indictment does not separately charge the Defendant with separate counts under § 1512(c)(1) and (c)(2), the government would request a special verdict form in any future jury trial on Count One to ensure unanimity on the specific offense(s) underlying a conviction. Because the Defendant in this case has elected to proceed by bench trial, ECF No. 96, the government does not anticipate that will be necessary here.

1512(c) based on the Supreme Court's guidance that subsection (c)(2) should be read 'in light of the context of subsection (c)(1).'").

The Government's argument in ECF No. 156 at *10-11 in the Warnagiris case directly contradicts its filing in ECF No. 106 at *4 in the *Baez* case. Both cases are pending before the Honorable Judge Friedman. The *Baez* case is highlighted in red below.

Moreover, the Government's proposed post-*Fischer* bench instructions, *see* ECF No 156 at *12, do not match the language of Mr. Warnagiris' Second Superseding Indictment, *see* ECF No. 49 at *2. While the Government's proposed elements of the offense require the Government to prove that the Defendant "committed or attempted to commit an act that impaired the integrity of or rendered unavailable records, documents," the indictment makes no such reference.

offense.

Elements

In order to find the defendant guilty of this offense, the Court must find that the government proved each of the following elements beyond a reasonable doubt:

- *First*, the defendant committed or attempted to commit an act that impaired the integrity of or rendered unavailable records, documents, or other things to be used in an official proceeding;
- *Second*, the defendant intended to impair the integrity of or render unavailable such records, documents, objects, or other things to be used in an official proceeding; and,
- *Third*, the defendant acted corruptly.

**COUNT TWO**

On or about January 6, 2021, within the District of Columbia and elsewhere, **CHRISTOPHER WARNAGIRIS**, attempted to, and did, corruptly obstruct, influence, and impede an official proceeding, that is, a proceeding before Congress, specifically, Congress's certification of the Electoral College vote as set out in the Twelfth Amendment of the Constitution of the United States and 3 U.S.C. §§ 15-18.

(Obstruction of an Official Proceeding and Aiding and Abetting, in violation of Title 18, United States Code, Sections 1512(c)(2) and 2)

The defense, therefore, asks this Court to reconsider the Motion to Dismiss Count Two of Mr. Warnagiris' Second Superseding Indictment. *See also United States v. Sutton*, Crim. No. 21-0598 (PLF), 2022 WL 11744415, at *2 (D.D.C. Oct. 20, 2022) (quoting *United States v. Hassanshahi*, 145 F. Supp. 3d 75, 80 (D.D.C. 2015)). As argued *supra*, the *Fischer* decision

impacts the requirements for an indictment under Section 1512(c). *But see United States v. Carnell, et. al.*, Crim. No. 23-139 (BAH), ECF No. 142 at *4-6 (D.D.C. Oct. 7, 2024).

If Count Two of Mr. Warnagiris' Second Superseding Indictment is dismissed, then no further analysis of any issues raised by the parties would be necessary. *See Serfass v. United States*, 420 U.S. 377, 388 (1975) (double jeopardy attached at the bench trial when the Court began to hear the evidence); *United States v. Jenkins*, 420 U.S. 358, 370 (1975).

## III. The Elements of the Offense Proposed by the Government Are Inconsistent with *Fischer*

The Government proposes bench instructions with the phrase "things to be used in an official proceeding." *See* ECF No. 156 at *12. The Government fails to define "things." The Government's proposition is inconsistent with the limitation imposed on the Government in *Fischer*.

Although *Fischer* at times used the phrase *things*, *Fischer* was specifically discussing *evidence. See United States v. Fischer*, 144 S.Ct. 2176, 2189-90 (2024). The entire focus of *Fischer* was limiting the code section to *evidence. Fischer* specifically designated Section 1512 as an "evidence-focused statute." *Id.* at 2189.

> Rather than transforming this evidence-focused statute into a one-size-fits-all solution to obstruction of justice, we cabin our reading of subsection (c)(2) in light of the context of subsection (c)(1). Doing so affords proper respect to "the prerogatives of Congress" in carrying out the quintessentially legislative act of defining crimes and setting the penalties for them.

*Fischer*, 144 S.Ct. at 2190. The entire *Fischer* decision reads as a constraint imposed on the Government.

The distinction between *things to be used* in an official proceeding, and *evidence* admissible in that proceeding, is significant. "Things to be used in an official proceeding," for example, can be podiums and pens used in a proceeding; but the podiums and pens would not themselves be *entered into evidence* at the proceeding before Congress on January 6. Section 1512 would not encompass the rendering of unavailability of podiums and pens, but would encompass the rendering of unavailability of evidence.

Stated differently— the Government's proposed instructions blur the concept that *anything can be evidence in any context* with the ruling in *Fischer*, which states that the evidence referenced by the statute is limited to the evidence that was to be used in the official proceeding before Congress on January 6. *See Fischer*, 144 S.Ct. at 2190. Irrespective of whether something can be generally used as evidence, for example, in some trial before a District Court, evidentiary impairment of availability is only criminalized under Section 1512(c)(2) if it was to be used as evidence in the "official proceeding" referenced in the indictment, which, in this case, is the certification proceeding. The podium and pen items mentioned above, for example, might be relevant in a criminal trial proceeding against someone accused of stealing a podium and pen; but the certification proceeding was not such a proceeding where the podium would be admissible evidence. Only evidence that Congress was to use in the official proceeding on January 6 is at issue for Section 1512(c)(2) analysis.

What are the types of *evidence* that congress would use to certify an election? 3 U.S.C § 15 answers this question as "the certificates and papers purporting to be certificates of the votes of electors appointed pursuant to a certificate of ascertainment of appointment of electors issued pursuant to section 5." *See* 3 U.S.C § 15(d)(1)(A). That's it; that's the extent of the evidence

relevant to Section 1512(c)(2) analysis. (And this is assuming that these items even reach the definition of "evidence" — in order to streamline this argument — since the January 6 certification was not a congressional investigation or inquiry, and the "certificates and papers" may fall short of the definition of "evidence.")

The Government's proposed instructions, therefore, are nowhere near the confines that *Fischer* placed on the Government's greedy reach. Although this can be potentially resolved with a definition that states that "things" means "evidence that can be used in an official proceeding" it would be more rational and prudent to just use the word *evidence* instead of *things*. Accordingly, the word "things" should be replaced with the word "evidence."

The Definition section must then define the evidence as "the certificates and papers purporting to be certificates of the votes of electors appointed pursuant to a certificate of ascertainment of appointment of electors," citing to 3 U.S.C § 15(d)(1)(A).

Additional restrictions from *Fischer* should be given as definitions. One of the definitions should be: "Not everything that influences an official proceeding and is done corruptly would be penalized by this code section. For example, lobbying activity that influences an official proceeding and is undertaken corruptly would not constitute a crime under this code section. This code section penalizes only crimes against evidence that is to be used in the official proceedings." *See Fischer*, 144 S.Ct. at 2189.

## IV. Facts Insufficient as a Matter of Law for a Guilty Verdict

In the case of Mr. Warnagiris, the Government made no reference to any evidence that was to be used by Congress in the official proceeding on January 6, which evidence Mr.

Warnagiris intended to impair or rendered unavailable through an act or attempt. The Government set forth no certificates or papers purporting to be certificates of the votes of electors as impaired in integrity or rendered unavailable to Congress by act of the defendant. There is no evidence that this was his intent — specific or whatsoever.

In fact, the record in this case does not demonstrate that the *evidence* that Congress intended to use, or could have used, on January 6 — the electoral certificates and papers purporting to be certificates as described in 3 U.S.C § 15 (assuming only for purposes of streamlining this argument that the certificates and papers are indeed a type of "evidence") — was *impaired* or rendered *unavailable* by an act undertaken, or attempted to be undertaken, by Mr. Warnagiris.[1] Under *Fischer*, this is what the Government would have to prove beyond a reasonable doubt to find the defendant to be found guilty of Section 1512(c)(2). Nothing in the record establishes these facts, certainly not beyond a reasonable doubt.

Moreover, there is no avenue for conviction through an "attempt" theory — since this obstruction remains a specific intent crime and there is no proof that this was Mr. Warnagiris' intent. Attempt crimes also require proof of the underlying intent.

And, this is not an "aiding and abetting" crime either. The Government's case in chief does not even warrant an aiding and abetting instruction. *See discussion infra.*

Mr. Warnagiris should be found not guilty of Count Two.

_____

[1] Hypothetically, even if this Court were to grant a new trial, no evidence exists in this case to show that the electoral certificates and papers purporting to be certificates as described in 3 U.S.C § 15, were in any way *impaired* or rendered *unavailable* by the actions of Mr. Warnagiris. Meaning, the Government would not be able to reach the *Fischer* standard no matter what it tried. This is why the Government did not state that there is new evidence that it plans to enter on the record related to Mr. Warnagiris' intent. There is no feasible avenue in this case for the Government to prove an obstruction case in light of *Fischer*. Section 1512(c) is a specific intent crime and requires proof of the defendant's specific intent to commit the crime, not just proof that a harm contemplated by the statute may have occurred.

**V.  The Trial Evidence Does Not Warrant an "Aiding and Abetting" Instruction**

An aiding and abetting conviction requires proof of full, advance knowledge of a crime

that a defendant participated in— which includes each of its elements— and that this crime was

something that the defendant wished to bring about and sought by his actions and efforts to

commit successfully, as opposed to just associating himself with a criminal venture in some way.

*See Rosemond v. United States*, 134 S. Ct. 1240, 1248-50 (2014) (holding that the government

must prove that an aider and abettor of criminal conduct participated with advance knowledge of

the elements that constitute the charged offense); *United States v. Goldtooth*, 754 F.3d 763, 769

(9th Cir. 2014) (reversing defendants' convictions for aiding and abetting because there was no

evidence that defendants had foreknowledge that the crime was going to occur); *United States v.

Encarnación-Ruiz*, 787 F.3d 581 (1st Cir. 2015); *Steiner v. United States*, 940 F.3d 1282 (11th

Cir. 2019). Moreover, in the D.C. Circuit, **the government must show that a defendant**

**intended to bring about the crime and that he knew what the principal intended to do to**

**commit the crime**. *See United States v. Wilson*, 160 F.3d 732, 738 (D.C. Cir. 1998) (the

government must show that the defendant intended to bring about the crime charged "and that he

knew why and what the [principal] intended to do").

The Supreme Court summarized this intent requirement as satisfied when a person

actively participates in a criminal venture with full, advance knowledge of the circumstances

constituting the charged offense. *Rosemond,* 134 S. Ct. at 1248-49. This "advance knowledge"

requirement is defined as knowledge that enables a defendant to make the relevant legal and

moral choice, with time that allows for a realistic opportunity to walk away or to quit the crime.

*Id.* at 1249. Under *Rosemond*, the *mens rea* element also requires a showing that the accused

intended to facilitate the <u>exact offense</u>'s commission. *Id*. at 1248. **Intent to advance some different or lesser offense is not sufficient under *Rosemond*;** instead, the intent must go to the specific and entire crime charged. *Id*.

     The evidence in this case showed the defendant engaged in a political discussion prior to January 6. It was filled with memes, jokes, and some outlandish comments about electors meeting in a hotel room. But none of the comments directly discussed the certification that took place in the Capitol on January 6, nor plans to disturb it on January 6. The relevant statement that was typed into that conversation by Mr. Warnagiris was: "We know nothing about that process and the Deep State functionaries who run it, and we might just watch Pence on 6 jan open up a bunch of blue tallies with NO competing slates. Is Pence on board? Will he have the balls in the moment he was made for?…" This does not show knowledge of the crime of Obstruction under Section 1512 that the Government claims was committed by another. Nor does it show intent to render any evidence unavailable at the certification; **the verb used by Mr. Warnagiris was "watch."** Under the D.C. Circuit standard for aiding and abetting, the Government would have to also name the principal and explain how Mr. Warnagiris knew what the principal was going to do *before* he aided this principal. But such a person doesn't exist, neither does Mr. Warnagiris' intent to aid or abet such a person.[2]

---

[2] Of note— the Government does not argue that there is any additional, new, or unknown evidence specifically about Mr. Warnagiris or his state of mind that it wishes to present upon reopening of the case. That is because there is no additional evidence — the Government gave it their all at trial. This means there is no direct evidence of Mr. Warnagiris' knowledge of the plans of others for purposes of proving aiding and abetting. Instead, the Government wishes to introduce evidence related to the certification that it did not introduce at trial, and the actions or conduct of others, thinking this constitutes aiding and abetting on its own. But this is a misunderstanding of the concept of aiding and abetting and the *mens rea* requirements that the law imposes. The Government's proposed theory is inconsistent with the requirements of aiding and abetting.

The only communications that Mr. Warnagiris had inside the Capitol Building was telling the crowd to be "quiet." The only statements Mr. Warnagiris made outside the building were: "I'm just getting crushed here, man; I don't have a choice," and then, "I'm just getting crushed! I'm just getting crushed! I'm just getting crushed! I'm just getting crushed! I'm just getting crushed! I cannot move! I cannot move. I cannot move." Mr. Warnagiris otherwise kept quiet and to himself while in the Capitol Building — albeit letting out a scream of "aaaahhh" when an MPD officer pushed him into a statue.

There was simply no evidence presented in the trial of advance knowledge of the specific crime of obstruction through acts that render electoral certificates unavailable. There is no evidence in this case of a specific intent to commit this exact crime (Mr. Warnagiris did not even enter the chambers like other January 6 defendants had done that day). Although Mr. Warnagiris helped or aided people through the Capitol Rotunda door, he helped both civilians and police officers alike. He helped these people achieve nothing more than entry into the building after screaming, "I'm being crushed here, I'm being crushed," while standing outside of those doors and after being repeatedly battered over the head with a flagpole — so hard that his hat flies off — before making his way safely inside.

The evidence in this case simply does not warrant an aiding and abetting instruction.

## VI. The Government's Proposed "Aiding and Abetting" Instruction is Inconsistent With the Law

The Government's proposed instructions on aiding and abetting are insufficient and inconsistent with *Rosemond v. United States*, 134 S. Ct. 1240 (2014).

If an aiding an abetting instruction were appropriate, to prove a defendant guilty of an offense by aiding and abetting, the government must prove each of the following beyond a reasonable doubt:

1) that another person committed the complete offense charged;

2) the defendant possessed full, advance knowledge that the crime was intended to be committed by another person, including each of the elements that constitute that crime;

3) the defendant had the specific intent to facilitate the commission of this crime;

4) the defendant acted knowingly and willfully;

5) the defendant aided, abetted, counseled, commanded, induced, or procured the person who committed the offense;

6) the defendant's actions in furtherance of the crime took place before the crime was completed.

*Rosemond v. United States*,134 S. Ct. 1240 (2014); *United States v. Gaviria*, 116 F.3d 1498, 1535 (D.C. Cir. 1997); *United States v. Wilson*, 160 F.3d 732, 738 (D.C. Cir. 1998).

It is not enough that the defendant merely associate with the person committing the crime, or unknowingly or unintentionally did things that were helpful to that person, or was present at the scene of the crime. The evidence must show beyond a reasonable doubt that the defendant acted with the full, advance knowledge of the crime and the specific intention of helping that person commit the offense charged. According to *Rosemond,* "what jury instructions should convey, is that the defendant has chosen, with full knowledge, to participate in the illegal scheme." 134 S. Ct. at 1250.

"Advance knowledge" is defined as knowledge that enables a defendant to make the relevant legal and moral choice ahead of time, sometime before the commission of the offense, a time period that affords the defendant with a realistic opportunity to walk away or to quit the crime. *Rosemond v. United States*,134 S. Ct. 1240 (2014).

"Specific intent" means that this crime was something that the defendant wished to bring about and sought by his actions and efforts to commit successfully, as opposed to just associating himself with a criminal venture in some way. *Rosemond v. United States*,134 S. Ct. 1240 (2014); *United States v. Gaviria*, 116 F.3d 1498, 1535 (D.C. Cir. 1997); *United States v. Wilson*, 160 F.3d 732, 738 (D.C. Cir. 1998).

Accordingly, a defendant acts with the specific intent to facilitate the crime of the principal when the defendant actively participates in a criminal venture with advance knowledge of the crime, knowing each element of the offense, and having acquired knowledge of the crime before the commission of the offense, at a time when the defendant still had a realistic opportunity to withdraw from the crime and walk away.

To "aid" means to actively assist or to help the commission of a crime. To "abet" means to encourage, advise, or instigate the commission of a crime. *See* 1 Charles E. Torcia, *Wharton's Criminal Law* § 29, at 181 (15th ed. 1993).

## VII. The Government's Motion to Reopen the Evidence Should be Denied

Instead of just responding to the motion filed by the Defense, the Government makes a cross-motion *within* the Response. *See* ECF No. 156 at *4 ("the government respectfully moves

the Court to reopen the evidence to allow the parties to submit new evidence in response to the Supreme Court's *Fischer* decision").

The Government's cross-motion was improperly filed. The Government's motion needed to be filed on the record *as a motion* to receive full briefing by the parties. Since the Government chose to file its motion only as a response, the Defense suggests that the Government has thereby **forfeited** the opportunity to *Reply* to the Defense on this cross-motion. Accordingly, the Defense will respond to the Government's Motion herein as *the last word* on the matter of the Government's Motion to Reopen the Evidence.

And, since the Government decided not to respond to Defendant's motion and chose to file it's own motion instead of using the Response pleading opportunity to actually respond to Defendant's present motion, the Government's request "to address the Court further to argue sufficiency of the evidence on the current record before the Court renders a verdict" in Footnote 2 of ECF No. 156 at *6, should be denied as **forfeited**. The Government made a deliberate and strategic decision to forfeit its Response opportunity when the prosecuted used the opportunity to argue his cross-motion — after the Government sought to extend its Response time to 60 days! *See* ECF No. 155. The Government should not given yet another opportunity to Respond. *Volenti non fit injuria* — to a willing party, no injury is done.


A. <u>**The Fifth Amendment Bars Government's Motion to Reopen the Evidence**</u>

In non-jury trials, jeopardy attaches at the moment "when the court begins to hear evidence." *Serfass v. United States*, 420 U.S. 377, 388 (1975). On Monday, April 1, 2024, at 9:30 AM, the court began to hear the evidence in the case of *United States v. Christopher Warnagiris*.

Jeopardy attached to the Section 1512 charge against Mr. Warnagiris on the morning of April 1, 2024.

On Thursday, April 4, 2024, the parties rested their cases. The Defense followed by raising Rule 29 motions. One of the Rule 29 motions alleged insufficiency of the evidence for a Section 1512(c)(2) conviction. Closing arguments took place on Friday, April 5, 2024, as well as additional Rule 29 motions. The parties were then dismissed. Completion of closing arguments before the bench was equivalent to discharge of the jury. *See Green v. United States*, 355 U.S. 184, 188 (1957) (discussing why a defendant cannot be retried once the jury is dismissed).

Five months later, on September 13, 2024, the Government moved to reopen their case — to not only add more evidence but also to pursue an entirely novel legal theory against Mr. Warnagiris, one that was not mentioned or pursued during the trial in April, an alternate aiding and abetting theory of the case. *See* ECF No. 156 at *11.

The Government is precluded from reopening its case to add evidence or to re-litigate the Section 1512 charge as an aiding and abetting crime. The defense asserts the Fifth Amendment and Double Jeopardy protections as defense to the Government's request to retry the defendant on an alternate legal theory.

The Government's improperly-filed motion seeks not just to add evidence knowingly and intentionally omitted, it seeks to prove an aiding and abetting alternative theory of the case. But the defense has already defended Mr. Warnagiris against the Section 1512 accusations at trial. The Government is barred by the Fifth Amendment from forcing the defendant to defend against another 1512 accusation of the same incident but based on an alternate theory of the case. Even though there is not yet a verdict in this case, the Fifth Amendment precludes further litigation on

the elements of the offense already tried. *See United States v. Jenkins*, 420 U.S. 358, 370 (1975)

(holding that "the resolution of factual issues going to the elements of the offense charged" are

protected by the Fifth Amendment once they have already been tried, regardless of the verdict);

*Lee v. United States*, 432 U.S. 23 (1977).

In *Green v. United States*, 355 U.S. 184 (1957), Justice Black wrote for the majority:

[T]he State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty.

355 U.S. at 187-88.

While there are instances when Double Jeopardy has been held not to prevent re-trial,

such a situation is not present before this court.

In this case, the Defense asks this Court to grant Mr. Warnagiris' Rule 29 Motion to

Acquit.

### B. Equity Bars the Government's Motion to Reopen the Evidence

In this instance, the Government moved for a new trial after having full notice of the

arguments that were made to the Supreme Court, before the *Fischer* decision was rendered, and

after the Defendant made Rule 29 motions.

The Supreme Court's *Fischer* decision restored Judge Nichols' original ruling and tracked

the dissent by Judge Katsas in the Court of Appeals decision. The Government was fully aware

of the issues that were being considered by the Supreme Court before the trial in April. The

Government was also aware that the Defense filed *amicus* briefs with the Supreme Court arguing

in favor of the very reading that the Supreme Court has now adopted. *See* ECF No. 60 and 113.

The *Fischer* decision simply affirmed the existing continuity between Subsection (c)(1) and

Subsection (c)(2) of Section 1512. *Fischer* did not introduce any new elements in the way that

*Rehaif v. United States* did when the Supreme Court added a word to the code section; *Fischer*

simply instructed the parties to read the two subsections in unison. *See generally Rehaif v. United*

*States*, 139 S. Ct. 2191 (2019); *United States v. Barrow*, No. 21-3081, n.3 (D.C. Cir. July 19,

2024).

   The Government had full and fair opportunity to argue its case against Mr. Warnagiris as

inclusive of both Subsection (c)(1) and Subsection (c)(2). The Government made a conscious,

knowing and strategic decision not to do so. Similarly, the Government had ample opportunity to

argue an aiding an abetting theory. Again, the Government made a conscious, knowing and

strategic decision not to do so.

   In *United States v. Blankenship*, 775 F.2d 735, 741 (6th Cir. 1985), the Sixth Circuit

weighed the appropriateness of reopening a case, according to the basis for reopening, the

timeliness of the request, and the prejudice that such a request would create.

> The most important consideration is whether the opposing party is prejudiced by
> reopening. One of the critical factors in evaluating prejudice is the timing of the motion
> to reopen. If it comes at a stage in the proceedings where the opposing party will have an
> opportunity to respond and attempt to rebut the evidence introduced after reopening, it is
> not nearly as likely to be prejudicial as when reopening is granted after all parties have
> rested, or even after the case has been submitted to the jury.

775 F.2d at 741; *see also United States v. Hinderman*, 625 F.2d 994, 996 (10th Cir. 1980)

(permitting reopening for "mere inadvertence or some other compelling circumstance," but only

"before the defendant begins its defense" and only when "that reopening does not violate either

the rules of criminal procedure or the defendant's right not to be put twice in jeopardy"). "The party moving to reopen should provide a reasonable explanation for failure to present the evidence in its case-in-chief." *United States v. Thetford*, 676 F.2d 170, 182 (5th Cir. 1982), *cert. denied*, 459 U.S. 1148 (1983). *See also United States v. Trant*, 924 F.3d 83, 90 (3d Cir. 2019) ("Government moved to reopen before Trant had the opportunity to present his evidence, thereby giving him the opportunity to respond and also limiting any disruption to the proceedings"). In the D.C. Circuit, reopening of evidence prior to verdict was permitted when counsel explained an inadvertent error led to the omission of an exhibit at trial. *Morgan v. United States*, 294 F.2d 911 (D.C. Cir. 1961). The case law suggests that reopening is a tool that was intended to aid in the correction of inadvertent trial errors.

In the case of Mr. Warnagiris, the Government's request to reopen was made after the Government rested, after the Defense rested, after closing arguments, after Rule 29 motions were heard and some even decided, and after the passage of five months' time. Moreover, the basis for reopening the case is not because the Government made an inadvertent omission or error at trial; instead, the Government made a conscious and strategic decision not to pursue a particular theory at trial and it now seeks to reopen the case in order to pursue an alternate theory against the defendant. The Government provides absolutely no explanation as to why it did not pursue the full charge under Section 1512(c) when it knew that the Supreme Court was considering that interpretation. And, the Government did not explain why it did not pursue an aiding and abetting theory at trial even though it was indicted and even though the Government's proposed bench instructions included aiding and abetting. *See* ECF No. 100 at *5.[3]

---

[3] The Government failed to present any evidence consistent with an aiding and abetting theory at trial. Accordingly, the aiding and abetting instruction is inapplicable in this case and the instruction should not be used.

The Government simply wants a second bite at the apple. **No case in any jurisdiction has allowed for reopening under such circumstances.** That is because the prejudice to the defense is too great at this juncture in the proceedings when balancing the equities. As the Tenth Circuit aptly opined in *Hinderman,* "the government's case-in-chief should not be treated as an experiment that can be cured after the defendant has, by motion, identified the failures." *United States v. Hinderman*, 625 F.2d 994, 996 (10th Cir. 1980). As to the prejudice that the Government claims for itself*,* the defense invokes the equity maxim *volenti non fit injuria* — to a willing party, no injury is done. The Government *deliberately* placed itself in this position.

The Government relied on *United States v. Trant* in its filing, *see* ECF NO. 156 at * 4, the Third Circuit case where the Court specifically cited the timing of the motion to reopen as critical to granting the motion— "Government moved to reopen before Trant had the opportunity to present his evidence, thereby giving him the opportunity to respond and also limiting any disruption to the proceedings." *See* 924 F.3d at 90. In the case at hand, the Government moved to reopen *after* the defense rested and *after* the trial phase was entirely completed. The untimeliness and unreasonableness of the Government's motion to reopen the Warnagiris case is critical to its request. The Government's request in Mr. Warnagiris' case is <u>not</u> akin to the one requested in *United States v. Trant.* The Government's request in Warnagiris is unduly disruptive and incurably prejudicial.

Although the Government continuously and baselessly argues that Mr. Warnagiris is not prejudiced by the Government's request to reopen, the Government's claim plainly is wrong. A reopening is **absolutely prejudicial to the defendant**. The defense has already rested and has already argued Rule 29 motions, pinpointing every flaw in the Government's case. Meaning, the

Government's request to reopen will cause for both parties to have to come back to court, and for both parties to have to re-litigate their cases, and for the Defense to lose its advantage of the Closing Argument and of the Rule 29 motion. Mr. Warnagiris' Rule 29 arguments and Closing Arguments would be entirely nullified if the Court were to grant the Government's request. That is in itself unreasonable prejudice to the defendant. But what's more is that the parties will have to then re-argue their closing statements under the Government's request — and the Government would get a second closing statement. A second closing argument is also incurably prejudicial to the defendant. On top of that, the Government's motion to reopen is not just a motion to reopen the Government's case after Rule 29 motions and after months have passed following the trial— it is also a motion to reopen the Defendant's case, made without his consent. The parties rested and the trial phase is over. The cost of re-litigation, both financially and through emotional toll on the defendant, is not one which can be disregarded in order to throw the Government a bone. (*In case prosecutor doesn't realize — defense counsel doesn't work for free.*) The financial and emotional burden on Mr. Warnagiris is a serious prejudice that needs to be considered.

The Government offers no rational explanation for not submitting the evidence they seek to now admit in their case in chief. This is evidence which the Government willfully chose not to submit while the trial was pending. The Court should not reward the prosecutor for making a deliberate choice at the expense of the Defendant. The Government's request to reopen seeks to inappropriately use a tool that was intended to correct inadvertent trial errors. There is no case law suggesting that reopening could be used to give the Government a new avenue to pursue a brand new theory of the case. Moreover, **there is no case law in any jurisdiction that either party has been able to find that allowed the Government to reopen their case this close to**

**verdict**. *See also United States v. Darnel*, Criminal Action No. 22-096-2 (CKK) (D.D.C. Sept. 26, 2023) (Judge Colleen Kollar-Kotelly denied the motion to reopen and stated that "the closer a case is to its submission to the jury, the higher the bar for either party to demonstrate the necessity of reopening the evidence"); *United States v. Hinderman*, 625 F.2d 994, 996 (10th Cir. 1980) ("the government's case-in-chief should not be treated as an experiment that can be cured after the defendant has, by motion, identified the failures"); *United States v. Keys*, 642 F.Supp.3d 1294, 1298-99 (E.D. Okla. 2022) (denying Government's motion to reopen after Defendant made a Rule 29 motion); *United States v. Quintero-Bernal*, No. 3: 17-cr-01354-GPC (S.D. Cal. Dec. 5, 2017) (denying Government's motion to reopen); *United States v. Valle-Sierra*, No. 06-cr-00431-MSK, 2008 WL 94805 (D. Colo. Jan. 7, 2008) (denying Government's motion to reopen).

Judge Nichols has held the Government responsible for making a strategic decision to not add additional evidence when the prosecutors knew such evidence might be necessary to prove their case and he denied the Government's motion to reopen under such circumstances. In Footnote 8 of his *DaSilva* opinion, Judge Nichols wrote that the prosecutors could have "attempted to present additional evidence" in light of a decision made in another case it was prosecuting, but intentionally chose not to. *See United States v. DaSilva*, Criminal Action No. 1: 21-cr-00564 (CJN) n.*8 (D.D.C. Feb. 8, 2024). The Court should not reward Government with relying on mere hope that its position will prevail at the appellate level and electing not to pursue a case in an alternative theory in the event the Government loses on appeal. After all, the Government knew from Judge Friedman's statements pre-trial that the court would reserve verdict until after *Fischer* is decided. In *DaSilva*, the Government had both knowledge and a full and fair opportunity, but elected not to use it— so Judge Nichols denied the Government's

motion to reopen their case to submit additional evidence in light of his subsequent adoption of a heightened legal standard. We ask this Court to apply the same reasoning and to deny the Government's request to reopen.

In summary, no authority supports the Government's request to reopen, the Government's request is unreasonably prejudicial, and the Government should not be rewarded for a deliberate, strategic decision not to present its full case, with a tool intended only for correction of inadvertent errors. The Government's motion should be denied and Mr. Warnagiris' Motion to Acquit under Rule 29 should be granted.

## VIII. The Defendant's Motions are Not Untimely

Mr. Warnagiris moved to *reconsider* two motions he made in a timely manner and also moved to amend bench instructions in light of new case law and prior to verdict. None of the Defendant's motions are "untimely." Government's arguments in ECF No. 156 at *7-10 are meritless.

As to the prejudice that the Government claims for itself if the Defendant's motions are reconsidered under *Fischer,* the defense again invokes the equity maxim *volenti non fit injuria* — to a willing party, no injury is done. The Government *deliberately* placed itself in this position. The Government knew exactly which issues the Supreme Court was considering and chose to omit the arguments it is now making as alternatives to its main theory. The *Fischer* decision is not a surprise that the Government could not have anticipated. As Judge Nichols signaled in Footnote 8 of his *DaSilva* opinion, the Government should not be rewarded when the Government *knew in advance* that a higher legal standard might be demanded but deliberately

squandered the opportunity to meet that standard. *See United States v. DaSilva*, Criminal Action

No. 1: 21-cr-00564 (CJN) n.*8 (D.D.C. Feb. 8, 2024).

WHEREFORE the defendant asks for Count Two to be dismissed, or, in the alternative, for the

Court to rule in his favor on his Rule 29 Motion for Acquittal, or, in the alternative, for a verdict

of NOT GUILTY on Count Two to be entered.

Respectfully submitted,

By Counsel:

_____/s/_____
Marina Medvin, Esq.
*Counsel for Defendant*
MEDVIN LAW PLC
916 Prince Street, Ste. 109
Alexandria, Virginia 22314
Phone: (703) 870-3300
Email: contact@medvinlaw.com

## <u>CERTIFICATE OF SERVICE FOR CM/ECF</u>

I hereby certify that on October 9, 2024, I will electronically file the foregoing with the
Clerk of the Court for the United States District Court for the District of Columbia by using the
CM/ECF system. I certify that all participants in the case are registered CM/ECF users, and that
service will be accomplished by the CM/ECF system.

_____/s/_____
Marina Medvin, Esq.

